EL PUEBLO DE PUERTO RICO, apelado, *v.* ROBERTO ORTIZ MARTÍNEZ, acusado y apelante.

*Número:* CR-83-51    *Resuelto:* 26 de febrero de 1985

*Felipe Cirino Colón,* de la División de Apelaciones de la Sociedad para Asistencia Legal, abogado del apelante; *Roberto Schmidt Monge, Procurador General,* y *Doris Zoé Pons Pagán, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Ante el Tribunal Superior de Puerto Rico, Sala de San Juan, fueron radicados dos (2) pliegos acusatorios mediante los cuales el Ministerio Público le imputó al aquí apelante Roberto Ortiz Martínez y al coacusado Daniel Cruz Rodríguez dos (2) supuestas infracciones a la Ley de Armas de Puerto Rico [1] por hechos alegadamente cometidos mientras actuaban *en concierto y de común acuerdo entre sí* en Santurce, Puerto Rico, el día 10 de septiembre de 1982. [2]

---

[1] Arts. 6 y 8 de la referida Ley, 25 L.P.R.A. secs. 416 y 418.

[2] El aquí apelante fue representado por el Lcdo. Israel Arana Arana y el coacusado Cruz Rodríguez por el Lcdo. Pedro V. Pedrosa González.

No habiendo mediado una solicitud formal de juicio por separado, (³) se les juzgó conjuntamente. El proceso criminal celebrado tuvo una duración de dos (2) días. En el primero de ellos, se procedió a la desinsaculación del jurado que había de intervenir en el mismo. En la sesión de la mañana del segundo día el Ministerio Fiscal, luego de exponer su teoría a los señores del jurado, sentó a declarar un solo testigo de cargo, el policía estatal Héctor L. Ortiz Santos.

El referido agente del orden público declaró —según el resumen que de su declaración hace el propio apelante en el alegato que ha radicado— que como a las 2:00 P.M. del día de los hechos, encontrándose de patrulla junto a otro agente en un auto oficial rotulado, recibió una llamada por el radioteléfono de la patrulla a los efectos de que había dos (2) individuos en "actitud sospechosa" frente a un establecimiento comercial localizado en la esquina de la Calle Colomer con la Avenida Ponce de León, de la Parada 16, Santurce, Puerto Rico, brindándoseles una descripción detallada tanto del físico como de la vestimenta de los mismos; que al acercarse al lugar pudieron notar que en el referido sitio efectivamente se encontraban dos (2) individuos que correspondían a la descripción recibida, quienes se encontraban parados "con distancia entre uno y otro", los cuales no estaban conversando entre sí y quienes, a su percepción, no estaban cometiendo delito alguno en su presencia; que ambos individuos, al notar su presencia, echaron a correr procediendo ellos a seguirlos en la patrulla; que al acercarse a la intersección de la Calle Colomer con la marginal de la Avenida Baldorioty de Castro, el individuo que resultó llamarse Daniel Cruz Rodríguez sacó y tiró al pavimento una pistola y, más adelante, el otro individuo (el aquí

---

(³) Surge de la "minuta" del día 27 de enero de 1983 que el licenciado Arana Arana expresó "que se *propone* radicar moción solicitando juicio por separado en cuanto a su cliente". (Énfasis suplido.) Así no lo hizo, sin embargo, ni en forma verbal ni por escrito.

apelante) tiró al pavimento una máscara o careta; que luego de ocupar los objetos antes mencionados, procedieron al arresto de ambos individuos al éstos detenerse y levantar las manos al encontrarse con un segundo vehículo que transitaba en dirección contraria a la que los referidos individuos corrían, acción que aparentemente se debió a éstos creer que las personas que viajaban en ese segundo vehículo también eran agentes de la Policía de Puerto Rico. El referido testigo de cargo "identificó" una pistola Colt, calibre 45, un "peine" conteniendo ocho (8) balas y una máscara o careta (de las conocidas como *ski mask*) de tela tejida como los objetos que fueron arrojados al pavimento por los coacusados y ocupados por ellos el día de los hechos, los cuales objetos fueron ofrecidos en evidencia por el Ministerio Fiscal.

El tribunal de instancia, luego de escuchar en ausencia del jurado los argumentos esgrimidos por los abogados de defensa en contra de la admisibilidad de dichos objetos, procedió a admitirlos en evidencia. En ese momento —*y todavía en ausencia del jurado*— el coacusado Daniel Cruz Rodríguez personalmente y por medio de su abogado, procedió a renunciar a su derecho a juicio por jurado y a declararse culpable de los delitos imputados; renuncia y alegación que, luego del examen de rigor, fueron aceptados por el tribunal de instancia. En la sesión de la tarde, (4) habiendo el aquí apelante ejercitado su derecho a no presentar prueba de defensa y luego de que las partes consumieron sus respectivos turnos de informe a los señores del jurado, el tribunal de instancia impartió las instrucciones correspondientes a éstos, retirándose el jurado a deliberar. Es de rigor enfatizar que a pesar de que el foro de instancia no impartió en su totalidad unas instrucciones especiales conforme éstas fueron solicitadas por la defensa,

---

(4) El tribunal de instancia, al reanudarse el proceso contra el aquí apelante, no impartió instrucción alguna a los señores del jurado respecto a la "ausencia" del mismo del coacusado Daniel Cruz Rodríguez.

ésta manifestó para récord *el estar satisfecha con las instrucciones impartidas por el tribunal* a los señores del jurado.[5]

Inconforme con el veredicto de culpabilidad que rindiera el jurado que intervino en el caso y sentenciado que fuera por el tribunal de instancia a cumplir una pena de tres años de presidio y seis meses de cárcel, respectivamente, por violación a los delitos del Art. 8 y Art. 6 de la Ley de Armas de Puerto Rico, el apelante radicó el correspondiente recurso de apelación. En el mismo le imputa al tribunal de instancia la supuesta comisión de tres (3) errores, a saber:

A. Erró El Tribunal De Instancia al Denegar La Moción De Supresión De Evidencia y Admitir Los Objetos Cuya Ocupación Fue Producto De Una Intervención Ilegal e Irrazonable Por Parte De La Policía.

B. Erró El Jurado Al Encontrar Culpable Al Apelante Con Prueba Insuficiente Para Su Convicción Más Allá De Duda Razonable.

C. Erró El Tribunal Sentenciador Al Denegar Transmitir Al Jurado Instrucciones Especiales Solicitadas Oportunamente Por La Defensa Del Apelante.

## I

En apoyo del primer señalamiento de error, argumenta el apelante,[6] en síntesis, que, no habiendo él y su acompañante estado cometiendo delito público alguno al estar parados en el sitio en que fueron observados originalmente por los agentes del orden público, ni constituyendo delito alguno el hecho de haberse ido corriendo del referido lugar, la acción de los agentes al seguirlos en la patrulla fue una ilegal y, en su consecuencia, los "frutos" de la misma (la pistola y la máscara) no son admisibles en evidencia. No le asiste la razón. Veamos por qué.

---

[5] En la "minuta" correspondiente al día 2 de agosto de 1984 se "hace constar que *ambas partes están satisfechas de las instrucciones dadas* a los Señores del Jurado por el Tribunal". (Énfasis suplido.)

[6] Citando el caso de *People* v. *Thomas,* 660 P.2d 1272 (1983), del Tribunal Supremo del Estado de Colorado, Estados Unidos de América.

■ La Policía de Puerto Rico, en protección de la ciudadanía en general, tiene perfecto derecho a patrullar las vías públicas de nuestro país. Como corolario de ese derecho, tiene la obligación de *investigar* toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva. Los dos agentes del orden público envueltos en el presente caso, en cumplimiento de su deber, así actuaron. Al acercarse al lugar específico indicado no sólo pudieron corroborar la presencia de dos individuos que respondían exactamente a la descripción brindada, sino que pudieron percatarse del hecho singular adicional de que estos individuos, al notar la presencia del auto patrulla, comenzaron a correr a la misma vez y en la misma dirección. Si bien es cierto que, hasta ese momento, las circunstancias apuntadas no eran suficientes para proceder al arresto de dichas personas al amparo de las disposiciones de la Regla 11 de las de Procedimiento Criminal, no es menos cierto que dichas circunstancias, por ser altamente peculiares, exigían que los referidos agentes del orden público continuaran la gestión investigativa legítima comenzada, sobre todo cuando consideramos que su actuación se limitó a seguir a los individuos en su patrulla por una vía pública en la investigación de la confidencia recibida. *Cf. Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348 (1977).

■ Procede destacar, por último, que la intervención con la persona en sí de los individuos sólo ocurre una vez los agentes del orden público tienen "motivos fundados" para arrestarlos; esto es, una vez los funcionarios públicos se percatan de la portación, por parte de uno de ellos, de un arma de fuego en la vía pública. Véase *Pueblo* v. *Del Río*, 113 D.P.R. 684 (1982). En cuanto a la "ocupación" propiamente de la evidencia aquí objetada —la pistola y la máscara— baste recordar que la garantía constitucional contra allanamientos y registros ilegales no cubre la incautación de una evidencia que es abandonada o arrojada por una persona a la vía pú-

blica. *Pueblo* v. *Saura Gómez*, 90 D.P.R. 801 (1964); *Pueblo* v. *Llanos Virella*, 97 D.P.R. 95 (1969).

## II

Mediante el segundo señalamiento de error —referente a la suficiencia de la prueba— el apelante sostiene que "la posesión y transportación del arma en cuestión solamente puede imputársele al coacusado Daniel Cruz" en vista de que él nunca tuvo la "posesión física del arma ocupada", que la prueba de cargo no lo "relaciona" con el referido coacusado al momento de ser observado por los agentes mientras se encontraba frente a la vidriera del establecimiento comercial, y que no "se establecieron hechos de los cuales se pudo haber inferido que [él] sabía que el coacusado estaba en posesión y portaba un arma de fuego".

Sabido es que la *"mera presencia* durante la comisión de un delito no es suficiente *por sí sola* para sostener una convicción, [citas], pero este hecho puede considerarse conjuntamente con las otras circunstancias que rodean el hecho delictivo a los fines de la determinación de responsabilidad, [cita]. No es indispensable, pues, que el acusado ejecute personalmente el acto delictivo y basta con su presencia pasiva, *siempre que su responsabilidad como co-autor pueda establecerse* por actos anteriores, o como el resultado de una conspiración en que participó, [citas], *o de un designio común".* (Énfasis suplido.) *Pueblo* v. *Aponte González*, 83 D.P.R. 511, 519–520 (1961). Debe mantenerse presente que el elemento de "concierto y común acuerdo o designio común", como cualquier otro hecho en controversia, puede ser establecido mediante prueba indirecta o circunstancial, *Pueblo* v. *Cancel Peraza*, 106 D.P.R. 28 (1977), y que la evidencia circunstancial es intrínsecamente igual que la evidencia directa. *Pueblo* v. *Salgado Velázquez*, 93 D.P.R. 380 (1966).

No está en controversia el hecho de que el coacusado Daniel Cruz, al estar portando sobre su persona un arma de fuego

sin tener las correspondientes licencias de posesión y portación, estaba cometiendo el día de los hechos dos delitos públicos. Ahora bien, en vista de que la prueba presentada por el Ministerio Fiscal durante el proceso celebrado es a los efectos de que el aquí apelante nunca tuvo la *posesión física* del arma de fuego, *el hecho en controversia a resolver* es si la prueba desfilada establece más allá de duda razonable que la posesión y portación de la referida arma de fuego por parte del coacusado Daniel Cruz era el producto o resultado, o formaba parte, de actuar en concierto y de común acuerdo o designio común por parte de los dos coacusados, en cuyo caso los actos del coacusado Daniel Cruz le son imputables al aquí apelante, el cual, en su consecuencia, responde criminalmente de la comisión de los mismos. No obstante no contar con prueba directa sobre el referido designio común, un análisis ponderado y sereno de *toda* la prueba presentada y admitida durante el proceso celebrado —la cual fue creída por los señores del jurado que intervinieron en el mismo— nos convence de que ello así quedó establecido mediante prueba circunstancial al efecto, ([7]) la cual, como sabemos, es "aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual —en unión a otros hechos ya establecidos— puede *razonablemente inferirse* el hecho en controversia". (Énfasis suplido.) ([8])

■  A pesar de que la prueba demuestra que los coacusados, al ser observados por primera vez por los agentes, se encontraban un tanto separados el uno del otro y no estaban conversando entre sí, es un hecho innegable que el apelante se encontraba en el lugar. Es correcto que ese hecho *por sí solo* no es suficiente para inferir un concierto y común acuerdo.

---

[7] Por ser un elemento subjetivo la prueba sobre concierto y común acuerdo o designio común, de ordinario, consiste de prueba circunstancial. *Cf. Pueblo* v. *Torres,* 81 D.P.R. 678 (1960) ; *Pueblo* v. *Soriano Rodríguez,* 92 D.P.R. 46 (1965), en cuanto a prueba respecto a la "intención criminal".

[8] Regla 10, inciso (H) de las Reglas de Evidencia de Puerto Rico.

Ahora bien, somos del criterio que los hechos que a partir de ese momento se suceden, *tomados y considerados en conjunto*, son suficientes para inferir más allá de duda razonable el concierto y común acuerdo en controversia. En primer lugar, ambos coacusados comienzan a correr a la misma vez y en la misma dirección al percatarse de la presencia del auto de patrulla. En segundo lugar, tenemos que en plena carrera el coacusado Cruz se desprende de un arma de fuego y, casi coetáneamente, el aquí apelante arroja al pavimento una "máscara o antifaz". Resulta pertinente señalar que dicha "máscara" está hecha de un material fuerte que cubre totalmente la cabeza, el rostro y el cuello de la persona que la utiliza, dejando únicamente al descubierto unos pequeños espacios para los ojos y la nariz de la persona. Es un artículo que se utiliza por algunas personas para protegerse del frío intenso en aquellos países en que la temperatura durante los meses de invierno alcanza grados o niveles de congelación. Comúnmente es utilizado por las personas que se dedican al deporte de esquiar sobre nieve; de ahí su nombre de *ski mask* en el idioma inglés. Dicha "máscara", en su consecuencia, no tiene propósito práctico alguno en Puerto Rico, [9] a no ser el de evitar que se conozca la identidad de la persona que la utiliza, propósito de ordinario relacionado con actividades ilícitas. Por último, tenemos el hecho de que ambos coacusados,

---

[9] El Art. 237 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4433, dispone:

"Será sancionada con pena de reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares o ambas penas a discreción del tribunal, toda persona que *llevare* una máscara o careta, barba postiza o cualquier otro disfraz, completo o parcial, o alterare de cualquier forma temporera o permanentemente su apariencia física con el propósito de:

"(a) Evitar que se le descubra, reconozca o identifique en la comisión de algún delito.

"(b) Ocultarse, fugarse o escaparse al ser denunciado, arrestado o declarado reo de algún delito." (Énfasis suplido.)

A nivel de instancia —en la vista sobre causa probable para arresto— se determinó que dicho artículo de ley sólo castiga el *uso* de la careta o la máscara. No pasamos juicio sobre la corrección o no de dicha determinación.

al unísono, se detienen y levantan sus brazos —señal o gesto de personas que se están "entregando o rindiendo"— al acercárseles un segundo vehículo de motor ocupado por varias personas que transitaban en dirección contraria a la que ellos corrían; acción indicativa, bajo los hechos particulares del presente caso, de una consciencia culpable. Estas circunstancias constituyen base suficiente de la cual se puede inferir más allá de duda razonable el hecho en controversia en el presente caso, esto es, que la posesión y portación del arma de fuego era el producto de un concierto y común acuerdo, según ello fue alegado en los pliegos acusatorios que radicara el Ministerio Fiscal.

III

Mediante el tercer señalamiento de error se le imputa al tribunal de instancia el incidir "al *denegar transmitir* al jurado *instrucciones especiales solicitadas oportunamente* por la defensa del apelante". (Énfasis suplido.) Dicho señalamiento se refiere a la solicitud por parte de la defensa de las siguientes:

INSTRUCCIONES ESPECIALES

La acusación en este caso imputa a los acusados que obraron en concierto y común acuerdo para tener y poseer una pistola.

El concierto y común acuerdo significa una unión de voluntades en concierto para cometer un acto ilegal.

Esta unión de voluntades tiene el deber el Ministerio Público de probarla con prueba de actos obstativos previos a la ocupación del arma en poder o lanzada por un acusado para poder imputarle al otro acusado el mismo delito.

El acto de correr no es suficiente acto obstativo como para imputarle un delito a un ciudadano.

Diferente sería si el acto de correr es a raíz de haberse cometido un delito, lo cual no es el caso aquí.

En este caso se presentó en evidencia, como prueba una declaración del policía en la que hace referencia a otro acusado en este proceso.

Dicha evidencia podrá considerarse solamente en relación con el acusado a que se refiere el policía y no podrá considerarse en relación al acusado Roberto Ortiz Martínez.

Su veredicto en cuanto al acusado Roberto Ortiz Martínez debe de ser rendido como si él hubiese sido juzgado separadamente.

Si la unión de voluntades de los acusados no se demostrara, entonces la responsabilidad habrá de recaer sobre aquel que la realizó por sí solo.

En este caso desfiló prueba en un juicio contra dos acusados pero en este momento ustedes van a determinar la culpabilidad o inocencia de un solo acusado y ustedes no están en la obligación de rendir el mismo veredicto contra este acusado que el que hubiesen rendido contra el otro acusado que no está presente.

Ustedes deben resolver de acuerdo con la apreciación de la prueba, en cuanto a cada acusado en particular y en virtud de ello apreciar y determinar la inocencia o culpabilidad de cada acusado por separado.

En este caso se le imputa a Roberto Ortiz Martínez la posesión y transportación de un arma que estaba en posesión y era transportada por otro acusado que no está aquí presente.

La posesión y transportación de un arma de fuego puede ser imputada a otro acusado cuando han mediado hechos constitutivos de delito y el acusado que no transportaba ni poseía el arma toma parte directa o indirectamente en la comisión de un delito.

En ausencia de actos previos por parte de un acusado en que estuviese envuelta el arma ocupada, sólo procede imputar la transportación y posesión al que de hecho la transportaba y poseía y no al otro acusado.

La policía sólo tiene derecho a intervenir con un ciudadano en ausencia de orden de arresto cuando se comete un delito en su inmediata presencia; cuando se ha cometido un delito grave, aunque no en su presencia y cuando tuviere motivos fundados para creer que la persona arrestada ha cometido un delito grave, aunque no se hubiese cometido.

En este caso deben ustedes determinar a base de la prueba desfilada si al momento de la intervención inicial con estos ciudadanos existían motivos fundados en la policía para creer que el acusado había cometido un delito grave.

La comisión de delitos se ampara en la clandestinidad y la sorpresa, tratando el criminal de ocultar los mecanismos e instrumentos del crimen.

Cuando la intervención inical de la policía con un ciudadano no es motivada por razón alguna, sino por el mero hecho de que corrió, el testimonio de que dicho ciudadano, sabiendo que lo perseguían, comete un delito de mostrar un arma y tirarla al pavimento debe de ser examinado con cuidado y detenimiento por el jurado.

██ Un ligero examen de las referidas instrucciones especiales solicitadas es suficiente para concluir que, si bien éstas aluden a algunos principios jurídicamente aceptables, ([10]) las mismas contienen normas de derecho erróneas, lo cual hubiera tenido el efecto indeseable de confundir a los señores del jurado sobre el derecho aplicable al caso. Debemos tener presente que el jurado, de ordinario, se compone de personas desconocedoras de las normas que nutren nuestro ordenamiento jurídico; debido a ello es que los tribunales de instancia tienen la ineludible responsabilidad de velar porque sus instrucciones sean correctas, claras, precisas, y lógicas. *Pueblo* v. *Andrades González*, 83 D.P.R. 849 (1961). Difícilmente se puede sostener que el foro de instancia erró al negarse a transmitir las transcritas instrucciones. ([11]) En resumen, dichas instrucciones especiales, por las razones antes expresadas y dados los hechos particulares del presente caso, resultaban improcedentes en derecho.

Posiblemente debido a lo anteriormente expresado es que la nueva representación legal del apelante "reformula" el citado tercer señalamiento de error en el alegato que radicara ante este Tribunal. Se sostiene ahora ante nos que el foro de instancia erró al *transmitir* a los señores del jurado una ins-

---

([10]) Los mismos fueron incluidos en las instrucciones impartidas por el tribunal.

([11]) Véase D. W. C. Blashfield, *A Treatise on Instructions to Juries in Civil and Criminal Cases Including Province of Court and Jury*, St. Paul, Minn., Keefe-Davidson Co., 1902, T. 1, págs. 337–338.

trucción sobre "fuga" y al *omitir* dar instrucciones sobre: (1) testimonio estereotipado, de acuerdo con lo resuelto en *Pueblo* v. *González Del Valle*, 102 D.P.R. 374 (1974); (2) la situación causada por el coacusado Daniel Cruz al éste declararse culpable ya comenzado el proceso, y (3) la alegada actuación ilegal de los agentes del orden público al seguir a los coacusados calle abajo no obstante éstos no haber cometido un delito "en su presencia".

■ Sabido es que la Regla 137 de las de Procedimiento Criminal, en lo pertinente, dispone que ninguna "de las partes podrá señalar como error cualquiera porción de las instrucciones u omisión en las mismas *a menos que* planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud". (Énfasis suplido.) La razón de ser de dicho principio es obvia: una excelente y ordenada administración de la justicia criminal requiere que la defensa formule sus objeciones respecto a las instrucciones oportunamente a nivel del tribunal de instancia para así brindarle a ese foro la oportunidad de corregir los errores que pueda haber cometido.

Ello no obstante, hemos resuelto que si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, "lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente. *Pueblo* v. *Del Valle*, 91 D.P.R. 174 (1964); *Pueblo* v. *López Jiménez*, 96 D.P.R. 132 (1968); *Pueblo* v. *Alicea Cruz*, 100 D.P.R. 295 (1971), y *Pueblo* v. *Rivera Carmona*, 108 D.P.R. 866 (1979).

En el presente caso surge de la "minuta" que recoge los procedimientos ocurridos el día 2 de agosto de 1984 ante el tribunal de instancia, que la defensa no sólo no objetó las instrucciones que le transmitiera dicho foro al jurado, sino

que manifestó para récord que estaba "satisfecha" con las instrucciones impartidas. Dicha acción por parte de la defensa es suficiente —al amparo de las disposiciones de la antes citada Regla 137 de Procedimiento Criminal— para disponer del error imputado, a menos que "derechos sustanciales" del apelante hayan sido afectados. *Pueblo* v. *Del Valle,* supra, pág. 179.

■ Un análisis sereno e imparcial de las instrucciones que efectivamente transmitió el tribunal de instancia a los señores del jurado en el presente caso[12] —examinadas las mismas a la luz de la prueba que desfilara en el mismo— nos convence de que dichas instrucciones se ajustan sustancialmente a Derecho por cuanto ilustraron al jurado sobre todos los aspectos legales pertinentes al caso. En su consecuencia, *determinamos que no se lesionaron "derechos sustanciales" del apelante.*[13] *Se dictará sentencia que confirme las dictadas por el tribunal de instancia.*

---

[12] Una "transcripción" de dichas instrucciones forma parte de los autos.

[13] A. Dados los hechos particulares del presente caso, no cometió error el foro de instancia al transmitirle al jurado la "instrucción sobre fuga". Aun cuando ello no fuera "evidente" para los agentes del orden público, el coacusado Daniel Cruz real y efectivamente estaba cometiendo, el día de los hechos, dos delitos públicos al estar portando en la vía pública sobre su persona un arma de fuego sin las correspondientes licencias. Como hemos visto, los pliegos acusatorios radicados imputan un "concierto y común acuerdo". De hacer el juzgador de los hechos —en este caso el jurado— la determinación inicial de que los coacusados efectivamente actuaban en concierto y de común acuerdo, ese juzgador podría llegar a la conclusión de que la acción de correr constituía una "fuga" por cuanto se estaba "huyendo" de donde se estaba cometiendo un delito público.

B. Aun cuando la declaración prestada por el policía Ortiz Santos versa sobre "evidencia abandonada o lanzada al suelo", un examen de la totalidad del testimonio prestado por dicho testigo durante el proceso celebrado demuestra que el mismo no es aquel testimonio estereotipado, flaco y descarnado que debe "escudriñarse con especial rigor" a que aludimos en *Pueblo* v. *González Del Valle,* 102 D.P.R. 374, 378 (1974), por lo que la alegada omisión por parte del foro de instancia de instruir al jurado a esos efectos no lesiona "derechos sustanciales" del apelante. De todas formas, la instrucción general que impartió dicho foro sobre los criterios a ser utilizados por ellos

El Juez Presidente Señor Trías Monge disiente sin opinión.

en la evaluación de la credibilidad del testimonio de los testigos subsanó cualquier perjuicio que pudiera haber sufrido por ello el apelante.

C. En todas y cada una de las ocasiones en que se acusan a dos o más personas mediante un solo pliego acusatorio, y las mismas son enjuiciadas conjuntamente, existe el "peligro o riesgo" de que uno o más de los coacusados resuelva declararse culpable ya comenzado el proceso. Es mandatorio que la aceptación, o no, de dicha alegación de culpabilidad por parte del tribunal se lleve a cabo en ausencia del jurado con el propósito de evitar que éstos sean influenciados indebidamente por ello. A pesar de que es imposible impedir que el jurado —una vez se reanuda el proceso contra los otros acusados— especule sobre las "razones" relativas a la ausencia, constituye una buena práctica el que los tribunales de instancia instruyan al jurado respecto a que la misma no debe ser tomada en consideración —ni a favor ni en contra— por ellos al resolver los casos de los restantes coacusados.

En el presente caso, a pesar de que la alegación de culpabilidad del coacusado Daniel Cruz se llevó a efecto en ausencia del jurado, el tribunal de instancia no impartió *instrucción específica* a éstos respecto a ello. Somos del criterio que dicha omisión ciertamente no amerita la revocación de las sentencias apeladas por cuanto la misma no "hiere derechos fundamentales" del apelante. *Pueblo* v. *Díaz Ríos,* 107 D.P.R. 140, 143 (1978).

D. Habiendo determinado que la actuación de los agentes del orden público en el presente caso fue una legal, se hace completamente innecesario el discutir el señalamiento en apelación a los efectos de que procedía una instrucción a los señores del jurado a los efectos contrarios.