EL PUEBLO DE PUERTO RICO, apelado, *v.* REINALDO ORTIZ DÍAZ, acusado y apelante.

Número: CR-85-13      Resuelto: 16 de junio de 1989

*Carmen Ana Rodríguez Maldonado* y *Antonio Colón Montes*, de la *División de Apelaciones de la Sociedad para Asistencia Legal*, abogados del apelante; *Rafael Ortiz Carrión, Procurador General*, y *Doris Zoe Pons Pagán, Procuradora General Auxiliar*, abogados de El Pueblo.

---

## SENTENCIA

### I

El apelante de autos solicita la revocación de la sentencia dictada por el Hon. Tribunal Superior, Sala de Guayama, que lo encontró culpable de la comisión de los delitos de resistencia u obstrucción a la autoridad pública, 33 L.P.R.A. sec. 4493, y de alteración a la paz, 33 L.P.R.A. sec. 4521.

La única prueba de cargo consistió en el testimonio del policía Julio Veguilla. Éste declaró que el 30 de marzo de 1984, en horas de la madrugada, patrullaba con el compañero José M. Reyes cuando recibieron una llamada en la que se les informaba que en el Cuartel de la Policía había una joven con una querella.

En el Cuartel de la Policía se encontraba Claribel Torres Picart, de 18 años, quien se querellaba de unos jóvenes que, montados a caballo, le habían arrebatado unos *sandwiches* en el barrio La Playa. Ambos policías se dirigieron al referido lugar para tratar de localizar a dichos jóvenes sin lograrlo. Luego regresaron al cuartel y le hicieron saber a la joven Torres Picart el resultado de su gestión.

Posteriormente, los policías recibieron en su carro de patrulla otra llamada en la que se requería que pasaran por el cuartel y se entrevistaran con el sargento Santiago. Una vez llegaron al cuartel, el sargento les informó que Claribel había tenido un incidente con él y que si la localizaban la condujeran ante su presencia. *Es significativo que el sargento Santiago no arrestó a la joven Torres Picart luego de que ocurriera el supuesto incidente y que tampoco se opuso a que ésta se fuera del cuartel. Posteriormente, le solicitó a los policías que la trajeran ante su presencia, pero sin haber obtenido una orden de arresto a esos efectos y sin explicarles cuál era el motivo para que la condujeran ante él.*

Los policías localizaron a la joven a eso de la 1:30 A.M. frente a su residencia. El policía Veguilla se bajó del carro

patrulla y le indicó a Claribel que lo acompañara al cuartel, pues el sargento quería entrevistarla en relación con un incidente que había tenido con él. La joven le contestó que no tenía nada que hacer en el cuartel, puesto que la policía no había hecho ninguna gestión en relación a su querella y que se fueran al "C. . .jo".

Los policías al escuchar esa expresión consideraron que la joven había cometido el delito de alteración a la paz y procedieron a detenerla. El agente Veguilla sostuvo que ambos tuvieron que forcejear con la joven para poder montarla en el vehículo oficial.

Posteriormente, la joven se lanzó del carro patrulla y comenzó a correr rápidamente en dirección a su residencia. El policía Veguilla la siguió y logró alcanzarla cuando ésta llegaba al balcón de su casa. El agente Reyes permaneció en el carro patrulla para ir a la residencia de Claribel aunque, inexplicablemente, llegó luego de que se realizara el arresto.

El policía Veguilla atestó que cuando él entró a dicho balcón el apelante le preguntó a Claribel lo que pasaba y ella le contestó que el policía la había golpeado. El apelante entonces le indicó al policía que tenía que tener una orden de arresto para poder intervenir con la joven. El testigo le gritó que la joven había cometido un delito y que si él seguía insistiendo en preguntar por la orden iba a tener que arrestarlo también. El policía Veguilla alega que el apelante le gritó "charlatán, hijo de la g. . .n p. . .a y c. . .n". El testigo señaló que al oír esas palabras le comunicó al apelante que estaba arrestado y que entonces este último se le abalanzó encima con el fin de resistir el arresto.

El testigo aceptó durante el contrainterrogatorio que, en relación con su intervención con estas personas, se había realizado una investigación administrativa. Además, aceptó que forcejeó con la joven y que desconocía que ésta estuviera embarazada.

La primera testigo de defensa, Claribel Torres Picart, declaró que el 30 de marzo de 1984 fue al Cuartel de la Policía a presentar una querella y que mientras le explicaba los hechos a uno de los policías, de apellido Cruz, el sargento Santiago le pasó su rotén por la espalda, por las nalgas y por la parte delantera de su cuerpo. Ella le inquirió al sargento si no tenía vergüenza y si le gustaría que a un familiar suyo lo trataran de esa manera. El sargento le dijo que se fuera inmediatamente del cuartel y la empujó. Como la joven se iba a caer tras recibir el empujón, se agarró del brazo del sargento, pero éste la golpeó. La joven declaró que esa fue la razón por la cual ella le propinó un golpe al sargento.

La joven atestó que luego de haber llegado a su casa se presentaron a la misma los agentes Veguilla y Reyes. Señaló que el agente Veguilla la agredió y que ella entonces llamó a su hermana, Vicenta Torres Picart. La hermana salió de la casa y le preguntó al policía Veguilla qué era lo que pasaba. Veguilla contestó que tenía una orden de arresto contra Claribel. Su hermana le pidió que le enseñara dicha orden y éste le replicó que él era la ley y que se metía donde quisiera, y le propinó un macanazo en el brazo.

Momentos después, su cuñada informó al apelante que los agentes la agredieron, lo que motivó que él abriera la puerta que da acceso al balcón de la casa y le pidiera al agente que le enseñara la orden de arresto o de allanamiento. Veguilla le replicó igualmente que él era la ley y que se metía donde quería. Cuando el apelante protestó, Veguilla le propinó también un macanazo.

A preguntas del fiscal, la testigo explicó que las actuaciones de su cuñado en el transcurso de la intervención policíaca se limitaron a inquirir acerca de la orden de arresto o de allanamiento. Declaró que quien golpeó al apelante fue el policía Veguilla.

La testigo Vicenta Torres Picart, por su parte, declaró ser ama de casa y esposa del acusado. Señaló que el 30 de

marzo de 1984, a eso de la 1:30 A.M., se encontraba durmiendo cuando escuchó a su hermana Claribel llamándola. Pudo apreciar cómo el policía Veguilla golpeaba a Claribel y le gritó inmediatamente que no le pegara, pues la joven estaba embarazada. Ella salió al balcón y le preguntó al policía qué pasaba y el policía, luego de gritarle "hija de la g. . . p. . .", le dio con la macana. La testigo llamó al apelante y éste, al salir, le preguntó al policía la razón por la cual le pegaba a su cuñada. El policía le respondió que no tenía que decirle un "c...jo" y que además le gritó "so canto de c...n". Indicó que el policía le dijo que él era la ley y que se metía donde quisiera. Luego de proferir esas palabras, arrestó al apelante.

El último testigo presentado en el juicio lo fue Reinaldo Ortiz Díaz. Éste atestó que el día de los hechos se encontraba durmiendo cuando a eso de la 1:20 A.M. llegó a su casa el policía Veguilla y agredió a su cuñada. Su esposa Vicenta, al escuchar los gritos, salió fuera de la casa y luego lo llamó, y le indicó que el policía la había agredido. El apelante, entonces, abrió la puerta que da acceso al balcón de la casa y le pidió al policía Veguilla explicaciones de por qué estaba agrediendo a su esposa y a su cuñada, y si tenía una orden para arrestar a esta última o una orden de allanamiento para entrar a su patio.

Atestó que el policía Veguilla le dijo "te callas so c. . .n", lo golpeó con la macana y luego lo arrestó. Manifestó que en ningún momento agredió al policía Veguilla ni tampoco que se le hubiera abalanzado encima en resistencia al arresto.

Luego de oída la prueba, el honorable tribunal encontró culpable al apelante por infringir los Arts. 258 y 260 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4493 y 4521, y lo condenó a una pena de seis (6) meses de reclusión en cada caso. El tribunal dispuso que las penas se cumplirían concurrentemente entre sí, bajo el régimen de sentencia suspendida.

No conforme con la sentencia, el apelante presentó ante nos su escrito de apelación. En el mismo plantea el señalamiento de error siguiente:

A. Erró·el Honorable Tribunal de Instancia al encontrar culpable y convicto al apelante en el presente caso a base de una prueba conflictiva e insuficiente en derecho para establecer su culpabilidad más allá de toda duda razonable. Alegato del Procurador General, pág. 7.

## II

*Intervención policíaca con Claribel Torres Picart*

Ante los hechos particulares de autos, evaluamos la legalidad de la intervención de los agentes Veguilla y Reyes con la joven Claribel Torres Picart por ser medular en la determinación de la culpabilidad del apelante.

Surge de los autos que los agentes Veguilla y Reyes, luego de recibir órdenes del sargento Santiago dirigidas a que trajeran ante su presencia a la joven Torres Picart, la encontraron frente a su residencia y la detuvieron con el fin de que ésta los acompañara al cuartel para la investigación de un incidente acaecido entre ella y el sargento Santiago. La joven, ante el requerimiento de los agentes, contestó que no tenía nada que hacer en el cuartel y finalmente les dijo que se fueran para el "c. . .jo".

Lo anterior plantea la validez en nuestra jurisdicción de las detenciones investigativas.

Desde hace varias décadas atrás establecimos que el concepto de detención para la investigación de un acusado es ajeno a nuestro sistema de derecho. *Pueblo v. Fournier*, 77 D.P.R. 222 (1954). Si bien es cierto que la Policía, en protección de la ciudadanía, viene en la obligación de investigar toda información referente a posible actividad delictiva, existe una gran diferencia entre el derecho que tienen los agentes del orden público a investigar y el derecho a interve-

nir con y privar de su libertad a un ciudadano. En nuestra jurisdicción un agente del orden público puede arrestar a una persona, en ausencia de orden de arresto expedida por tribunal competente, cuando dicho agente tiene motivos fundados para así hacerlo al amparo de las disposiciones de la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985). Así como en aquellos casos en que la persona arrestada hubiese cometido un delito grave aunque no en su presencia. Regla 11(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

La intervención de los agentes policíacos con la joven Torres Picart constituye una detención investigativa, ante el hecho innegable de que dicha intervención la privó de su libertad. Ello se evidencia con el intento de los policías de llevar a la joven hasta el cuartel sin la existencia de motivos fundados.

*Surge de los autos que el sargento únicamente les había solicitado a los agentes que si veían a la joven Torres Picart la condujeran hasta el cuartel por ésta haber tenido un "incidente" con él. El sargento no les indicó, sin embargo, en qué había consistido dicho incidente.*

En *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988), sostuvimos que se puede establecer la existencia de motivos fundados para justificar un arresto sin orden a base de información policíaca colectiva, pues es innecesario que el oficial que arresta lo haga únicamente según su conocimiento personal, pero se requiere que el agente que inició la cadena de información tenga información de primera mano y se la ofrezca a los agentes que vayan a intervenir con los sospechosos. El Ministerio Público tiene que establecer la existencia de los motivos fundados colectivos durante el juicio.

En autos, el Ministerio Público no presentó prueba tendente a demostrar la existencia de aquellos motivos fundados que hicieran lícita la intervención de los policías con Claribel. De hecho, el sargento Santiago, quien sería en úl-

tima instancia la persona que podría evidenciar la existencia de dichos motivos necesarios para haber intervenido con Claribel, no testificó durante el juicio.

Como consecuencia de la detención ilegal de Claribel, se suscita la expresión de la joven que propició su arresto, así como el posterior episodio en la residencia del apelante. Ello plantea si Claribel Torres cometió o no el delito de alteración a la paz.

Es norma de este Tribunal que expresiones tales como las que utilizó la testigo Claribel Torres Picart, más que palabras con carácter de molestia, resultan ofensivas, hirientes e irritantes, capaces de provocar una respuesta violenta y, por consiguiente, una alteración a la paz. *Pueblo v. Caro González*, 110 D.P.R. 518 (1980). Sin embargo, las particulares circunstancias de autos nos llevan a concluir que la conducta evidenciada por la joven no configura el delito de alteración a la paz. En ese sentido, el caso de autos puede distinguirse del contexto normativo expuesto en *Pueblo v. Caro González*, supra.

En ese caso, cuando el acusado profirió las expresiones que se evaluaron como alteración a la paz, la Policía ejecutaba un acto totalmente lícito. Allí, la Policía intentaba poner bajo control un episodio de alteración a la paz, ya en ejecución, que consistía en la perturbación de la paz de un hogar y de un vecindario. Aquí la Policía intentaba llevar a la joven ante un oficial para la investigación de un incidente que, conforme al testimonio no controvertido de la joven, *consistió en actos ofensivos a su integridad corporal por parte del sargento Santiago.*

*A pesar de que no podemos sancionar la expresión utilizada por la joven Torres Picart*, tampoco podemos adscribirle a la misma una connotación delictiva ante la singularidad de los hechos planteados en este caso.

La joven Torres Picart tenía, al momento de los hechos, unos dieciocho (18) años, una escasa escolaridad y se desen-

volvía dentro de una subcultura de pobreza. Reconocemos que si bien los policías están entrenados —o deben estarlo— para afrontar situaciones difíciles, eso no quiere decir que vienen obligados a soportar toda clase de insultos, faltas de respeto, improperios y provocaciones. *Pueblo v. Caro González*, supra. Sin embargo, en las particulares circunstancias de autos se requería un mayor auto control de sus emociones y un mayor grado de tolerancia, especialmente cuando el agente ya había provocado la situación.

Obviamente el testimonio vertido en el juicio por el policía Veguilla sobre la expresión vertida por la joven ante la presencia de los oficiales policíacos sirvió más como pretexto para arrestar a Claribel Torres, sin que existiera motivo válido para el mismo, que como una expresión capaz de provocar una respuesta violenta de los policías.

*Actuación del apelante*

Una evaluación cuidadosa de la prueba desfilada en autos nos lleva a concluir que las actuaciones y las preguntas hechas por el apelante, durante la intervención del agente Veguilla con su familia, no configuraron el delito de resistencia y obstrucción a la autoridad pública.

El Art. 258 del Código Penal de Puerto Rico, *supra,* dispone que:

Toda persona que voluntariamente resistiere u obstruyere, demorare o estorbare a cualquier funcionario o empleado público en el cumplimiento o al tratar de cumplir algunas de las obligaciones de su cargo, será sancionada con pena de reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares o ambas penas a discreción del tribunal.

Cualquier acto de oposición a la orden que el funcionario trata de cumplir constituye una resistencia a la autoridad. Sin embargo, es esencial que el funcionario o empleado público que está cumpliendo con su deber lo haga dentro del ámbito del mismo de manera lícita. D. Nevares-Muñiz, *Có-*

*digo Penal de Puerto Rico*: *revisado y comentado*, República Dominicana, 1986, págs. 424–425. Por ello es que el comportamiento de un ciudadano respetuoso de la ley, que se excite o se moleste cuando las autoridades policíacas intervienen con su persona —sin razón— como en las circunstancias de autos, es comprensible. *City of Columbus v. Guidotti*, 160 N.E.2d 355 (1958); Nota, *Resisting Unlawful Arrest*, 33 Wayne L. Rev. 1471 (1987).

A raíz de la infundada intervención de los policías con la joven Torres Picart, se suscitaron los eventos que culminaron con el arresto del apelante cuando éste, en defensa de la integridad de la joven Torres Picart y de su señora esposa, y en protesta por la invasión de su propiedad a altas horas de la noche, objetó las actuaciones de los policías. Siendo la actuación de la policía una que no se ajustó a derecho, no podía, por consiguiente, configurarse el delito de resistencia u obstrucción a la autoridad pública en la persona del apelante.

Nos resta por considerar si el apelante cometió el delito de alteración a la paz ante la presencia del agente Veguilla.

Nuestra Constitución le garantiza a todo acusado la presunción de inocencia como uno de los derechos humanos que asiste a todo acusado. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Su implantación conlleva que el Estado pruebe la culpabilidad del acusado más allá de toda duda razonable. *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287 (1988); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748 (1985); *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974).

Es norma de este Tribunal el respetar y sostener la apreciación hecha por los jueces de instancia de la prueba ante ellos ofrecida. La excepción a esta norma ocurre cuando un examen detenido de la misma nos convence de que el tribunal descartó injustificadamente elementos probatorios importantes o cuando fundó su criterio en testimonios de escaso valor o inherentemente improbables. *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo v. Luciano Arroyo*, 83

D.P.R. 573 (1961). Así, hemos dejado sin efecto un fallo condenatorio cuando el análisis de la prueba que tuvo ante sí el tribunal sentenciador deja serias dudas sobre la culpabilidad del acusado. *Pueblo v. Meléndez Rolón*, 100 D.P.R. 734 (1972).

Luego de realizar una evaluación ciudadosa de la prueba presentada en autos, concluimos que la misma no establece la culpabilidad del acusado más allá de toda duda razonable. La prueba de defensa en todo momento fue firme en sostener que el apelante no había proferido palabras indecorosas y obscenas contra el policía o que lo hubiera agredido. Por el contrario, todos los testigos de la defensa atestaron que el policía Veguilla golpeó en forma violenta a Claribel, a su hermana y al propio apelante.

La prueba de defensa también probó que el apelante le solicitó al policía Veguilla que le mostrara la orden de arresto contra su cuñada, pero que el agente, conjuntamente con la utilización de palabras ofensivas, le expresó que él era la ley y que la ley se metía donde quería. El agente le indicó, además, que si continuaba pidiendo la orden de arresto contra Claribel tendría que arrestarlo. Ante esta prueba no podemos establecer que el acusado hubiera cometido el delito de alteración a la paz.

Por los fundamentos antes expuestos, *revocamos la sentencia apelada.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino. El Juez Asociado Señor Alonso Alonso emitió un voto de conformidad.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Voto de conformidad emitido por el Juez Asociado Señor Alonso Alonso.

El abuso de autoridad y los actos de brutalidad policíaca del caso de autos son incompatibles con nuestro sistema democrático de gobierno y con los principios fundamentales de nuestra Constitución. Vivimos en un sistema de ley donde las personas que lo administran deben ser los primeros en respetarlo y en dar el ejemplo. El aumento en la criminalidad y los reclamos de grupos sociales para que se actúe contra los delincuentes con "mano fuerte" no pueden ser óbice para que aflojemos las garantías constitucionales de los ciudadanos y para que los agentes del orden público abusen de su autoridad.

La brutalidad policíaca no tiene cabida en nuestra sociedad. Viola los más elementales principios de respeto al ser humano y denigra la institución del Estado encargada de hacer cumplir la ley. Socaba, además, la fe y el respeto que los ciudadanos le tienen a sus instituciones y a los procesos democráticos.

En este caso, el abuso de la autoridad se llevó a cabo contra personas *indefensas* y humildes. Ello hace más repudiable y censurable la acción.