EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>            vs.<br><br><br>Luis R. Rodríguez Vicente<br><br>    Recurrido | Certiorari<br><br>2008 TSPR 46<br><br>173 DPR \_\_\_\_ |

Número del Caso: CC-2006-864


Fecha: 10 de marzo de 2008


Tribunal de Apelaciones:

          Región Judicial de Guayama, Panel XI


Juez Ponente:

          Hon. Andrés Salas Soler


Oficina del Procurador General:

          Lcdo. Javier E. Rosario Pérez
          Lcdo. Alex Omar Rosa Ambert
          Procurador General Auxiliar


Abogados de la Parte Recurrida:

          Lcdo. Luis F. Camacho
          Lcdo. Luis A. Santiago Burgos


Materia: Asesinato, Instrucciones de Jurado


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        vs.                   CC-2006-864     *CERTIORARI*

Luis R. Rodríguez Vicente

    Recurrido

*PER CURIAM*

San Juan, Puerto Rico, a 10 de marzo de 2008

Nos enfrentamos, nuevamente, a una preocupante y recurrente situación a la cual no deberíamos confrontarnos con tanta frecuencia, esto es, una actuación del Tribunal de Apelaciones <u>que no solamente es errónea sino que es claramente contraria a reiterada jurisprudencia de este Tribunal</u>.

I

El jurado que intervino, como juzgador de los hechos, en el presente caso rindió veredicto unánime de culpabilidad en contra de Luis Rodríguez Vicente por el delito de Asesinato en Primer Grado, Artículo 83 del Código Penal de Puerto Rico de 1974, y por el delito de posesión y uso ilegal de

un arma de fuego, Artículo 5.04 de la Ley de Armas, 25 L.P.R.A. § 458(c). Conforme a los veredictos rendidos, el Tribunal de Primera Instancia, Sala Superior de Guayama, sentenció a Luis Rodríguez Vicente a 99 años de reclusión por Asesinato en Primer Grado y a 20 años de reclusión por violación a la Ley de Armas, a ser cumplidos de manera consecutiva.

Previo a que el jurado se retirara a deliberar, el juez que presidió los procedimientos discutió con la defensa y con el ministerio público las instrucciones particulares que habría de impartirles a los miembros del jurado. La defensa solicitó que se impartiera, entre otras, la instrucción sobre el delito de Homicidio Voluntario. El ministerio público se opuso y el Juez determinó que no era procedente la referida instrucción.

Tras rendirse los veredictos de culpabilidad en su contra, Luis Rodríguez Vicente acudió ante el Tribunal de Apelaciones aduciendo, de manera principal, que el tribunal de instancia había errado al negarse a transmitirle al jurado una instrucción sobre el delito de Homicidio Voluntario. El tribunal apelativo intermedio acogió dicho planteamiento y, en consecuencia, <u>revocó</u> la sentencia emitida por el tribunal de instancia y ordenó la celebración de un nuevo juicio.

Inconforme, el Procurador General de Puerto Rico acudió --mediante recurso de *certiorari*-- ante este Tribunal, imputándole al foro apelativo haber incidido:

… al concluir que era indispensable que se instruyera al jurado sobre los elementos del delito de homicidio previo a la deliberación y revocar el veredicto de culpabilidad.

Expedimos el recurso. Revocamos; veamos por qué.


II

Conforme a la prueba desfilada ante el Tribunal de Primera Instancia[1], el domingo 18 de enero de 2004, poco después de las 2:00 PM, Alberto Alexis Rivera Meléndez, su esposa Johana Ramos Vega y el hijo de ambos de un año y medio de edad, llegaron a su residencia sita en la barriada San Cristóbal del Municipio de Cayey, luego de haber comprado en una tienda cercana un "kit" para brillar gomas de carro, una cerveza y unas papitas para el niño. Previo a llegar a la residencia y al pasar por un badén cercano a ésta, Alberto, quien conducía un Honda Prelude, "chilló" gomas. En la acera al otro lado de la calle, justo frente al badén, se encontraba Luis Rodríguez Vicente --también conocido como Taiwán-- con unos amigos.

Al bajarse del automóvil, Taiwán increpó a Rivera Meléndez sobre lo ocurrido. Se inició una discusión entre

---

[1] Ante el Tribunal de Primera Instancia se presentó el testimonio de: 1. Agente Omayra Laboy Lind; 2. Nereida Meléndez, madre del occiso; 3. Agente Luis A. Roque Rodríguez; 4. Johana Ramos Vega, esposa del occiso y testigo ocular de los hechos; 5. Agente Alberto Giraud Vega; 6. Dr. Francisco Cortes, perito patólogo forense; y 7. Edward Pérez Benítez, examinador de armas de fuego del Instituto de Ciencias Forenses. Forman parte del expediente la exposición narrativa estipulada de la prueba y la transcripción del testimonio del Agente Luis A. Roque Rodríguez.

Taiwán y Rivera Meléndez, en la cual, posteriormente, ambos intercambiaron golpes. Terminado el intercambio de golpes, y mientras Taiwán se dirigió a su carro, los demás individuos que acompañaban a éste se quedaron discutiendo con Rivera Meléndez, expresándole que el problema era que se pasaba chillando gomas alrededor de niños, lo cual éste negó rotundamente.

Aproximadamente tres minutos después, Taiwán regresó en su carro, bajándose del mismo con un bate en la mano. Taiwán entonces se acercó a Rivera Meléndez, preguntándole a éste "que si él le iba a tirar". Rivera Meléndez alzó las manos y le contestó "si tú me tiraste pues yo te iba a tirar". En ese momento, Taiwán se levantó la camisa y sacó un arma de fuego de su cintura. Rivera Meléndez comenzó a correr, alejándose del lugar y, ya de espalda, Taiwán le hirió con tres disparos. Como consecuencia de los disparos, Rivera Meléndez cayó de pecho al suelo y, ya en el suelo, Taiwán se acercó y le hizo tres disparos más en la cabeza a Rivera Meléndez, ocasionándole la muerte.

Según surge del testimonio del médico forense, una herida fue en el costado izquierdo; la bala penetró la cavidad abdominal por la parte posterior y alcanzó el mesenterio, el intestino y el hígado antes de salir del cuerpo. Otra herida fue en el muslo izquierdo; la bala atravesó el muslo y al salir del cuerpo rozó el dorso del pene. Una tercera herida fue en la palma de la mano y la bala salió por la base del dedo índice. Los últimos tres

impactos de bala entraron por la parte izquierda trasera de la cabeza y salieron cerca una de la otra, destrozando la parte posterior del cerebro donde se controlan funciones vitales como la respiración y los latidos del corazón.

III

Es harto conocido en nuestra jurisdicción que las instrucciones al jurado constituyen el mecanismo procesal mediante el cual los miembros del jurado toman conocimiento del derecho aplicable al caso. E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, Editorial Forum, Colombia, 1992, p. 330. En vista de que el jurado, de ordinario, está compuesto de personas desconocedoras de las normas jurídicas vigentes en nuestro ordenamiento jurídico, el magistrado que preside el proceso tiene el deber ineludible de instruir a los miembros del jurado sobre el derecho aplicable al caso y de velar que las instrucciones impartidas sean correctas, precisas y lógicas. El Pueblo de Puerto Rico v. Negrón Ayala, res. el 1 de junio de 2007, 2007 TSPR 103; El Pueblo de Puerto Rico v. Rosario Orangel, 160 D.P.R. 592 (2003); El Pueblo de Puerto Rico v. Ortiz Martínez, 116 D.P.R. 139 (1985).

"En términos generales, el acusado tiene derecho a que se le transmita al jurado todos los aspectos de derecho que, bajo cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, ello aunque la prueba de defensa sea débil, inconsistente o de dudosa credibilidad".

El Pueblo de Puerto Rico v. Negrón Ayala, res. el 1 de junio de 2007, 2007 TSPR 103. Lo indispensable es que, al momento de aquilatar la prueba, el jurado tenga a su disposición las instrucciones apropiadas, pues "solo así el veredicto será, cualquiera que fuese, uno justo". Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 95 (2000).

Entre los distintos aspectos que deben incluirse en las instrucciones al jurado, se encuentran los elementos de los delitos inferiores al imputado o comprendidos dentro de éste. Al respecto, reiteradamente hemos resuelto que sólo procederá impartir instrucciones al jurado sobre dichos elementos cuando la prueba así lo justifique. "Esto es, una instrucción sobre delitos inferiores no le será transmitida al jurado de forma automática, sino que, es necesario que exista evidencia de la cual el jurado pueda razonablemente inferir que el acusado es culpable del delito inferior". El Pueblo de Puerto Rico v. Rosario Orangel, ante, p. 605. Siendo así, no incurre en error un juez que deniega una instrucción sobre un delito menor incluido cuando estima que "la evidencia, aun pudiendo ser creída por el jurado, resulta insuficiente en derecho para establecer la comisión del referido delito". El Pueblo de Puerto Rico v. Rosario Orangel, ante, p. 606.

En el caso específico de instrucciones sobre el delito de homicidio voluntario, en un proceso por el delito de asesinato, hemos resuelto reiteradamente que procede impartir instrucciones sobre el delito de homicidio

únicamente si de la prueba surge alguna evidencia que justifique un veredicto de homicidio, aun cuando ésta sea débil o escasa. El Pueblo de Puerto Rico v. Negrón Ayala, ante; El Pueblo de Puerto Rico v. Rosario Orangel, ante; El Pueblo de Puerto Rico v. Moreno Morales I, 132 D.P.R. 261 (1992); El Pueblo de Puerto Rico v. Serbia Bonilla, 75 D.P.R. 394 (1953); El Pueblo v. Alméstico, 18 D.P.R. 320 (1912). "Mientras haya alguna prueba pertinente a la cuestión de homicidio, la credibilidad y peso de la misma es cuestión a ser determinada por el jurado y no una de derecho a ser resuelta por el tribunal". El Pueblo de Puerto Rico v. González Colón, 110 D.P.R. 812, 816 (1981).

No obstante, ello no implica que los tribunales vengan obligados a impartir instrucciones sobre el delito de homicidio voluntario cuando no hay nada en la evidencia que pueda justificar tal veredicto. "A fin de cuentas, permitir que subsista la práctica de transmitir instrucciones de homicidio cuando los autos están huérfanos de toda evidencia que justifique tal veredicto, equivaldría a autorizar que el [j]urado imponga un castigo diferente al prescrito para el delito que de hecho se cometió". El Pueblo de Puerto Rico v. Moreno Morales I, ante, p. 283. Véase además El Pueblo de Puerto Rico v. Serbia Bonilla, ante.

IV

El Artículo 85 del Código Penal de Puerto Rico de 1974 --vigente al momento de los hechos-- disponía, en lo pertinente, que comete el delito de homicidio "toda persona que matare a otra en ocasión de súbita pendencia o arrebato de cólera". Según se deduce del texto citado, los elementos del delito son: 1. dar muerte a un ser humano; 2. como consecuencia de una súbita pendencia o arrebato de cólera; 3. causado por una provocación adecuada de parte de la víctima. El Pueblo v. Cruz Correa, 121 D.P.R. 270 (1988).

Al respecto, hemos expuesto que:

[e]l homicidio presupone que el autor de la muerte actuó movido por una provocación adecuada de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actúa bajo impulsos mentales causados por cólera, pendencia o emoción violenta. … **[S]i no existe esa provocación o si habiendo existido la misma no es lo suficientemente grave y la actuación del matador está fuera de toda proporción con el grado de provocación, el acto de dar muerte constituye asesinato aunque el acusado no hubiese preconcebido la idea**.

De lo anterior se desprende que para determinar la posible comisión del delito de homicidio hay que identificar, al menos tres factores. Estos son: (i) que la muerte haya ocurrido mientras el actor se encontraba en un arrebato de cólera o pendencia súbita ("heat of passion"); (ii) que la muerte estuviere precedida de una provocación adecuada; y (iii) que la muerte haya ocurrido antes de que el arrebato o pendencia sufrida por el actor razonablemente se hubiere enfriado ("cooling off period"). El Pueblo de Puerto Rico v. Rosario Orangel, ante, p. 608. Véase además El Pueblo de Puerto Rico v. Negrón Ayala, ante. (Énfasis nuestro.)

Por otro lado, el Artículo 82 del Código Penal de Puerto Rico de 1974 disponía que el delito de asesinato es

"dar muerte a un ser humano con malicia premeditada". Como es sabido, dicho delito se divide en primer y segundo grado dependiendo de la perversidad demostrada por el acusado al momento de cometer el acto. El asesinato en primer grado requiere, aparte de la malicia premeditada, el elemento de deliberación; mientras que en el asesinato en segundo grado la muerte es maliciosa y premeditada, pero la deliberación está ausente. El Pueblo de Puerto Rico v. Rosario Orangel, ante. Véase además El Pueblo de Puerto Rico v. Negrón Ayala, ante.

Conforme a ello, hemos expresado que:

[l]a malicia premeditada, que es el elemento mental requerido en el delito genérico de asesinato, implica la ausencia de justa causa o excusa y conciencia al ocasionar la muerte de un semejante. Por otro lado, la deliberación es la resolución o decisión de matar, después de darle alguna consideración.

Ello no obstante, **cualquier periodo de tiempo, por corto que sea, será suficiente para que pueda tener lugar la deliberación**. Incluso, hemos sostenido que ese lapso puede ser tan rápido como el pensamiento. Esto es, tanto la deliberación como la malicia premeditada <u>no</u> requieren necesariamente un plan previo ni que se conciban con mucho tiempo de antelación a los hechos. No tiene que transcurrir determinado periodo de tiempo entre la intención de matar y la muerte misma ya que ambos elementos pueden concebirse en el momento mismo del ataque. … **[L]a premeditación y la deliberación pueden formarse en un instante antes del acto, y pueden existir no obstante la rapidez con que el acto se haya realizado**. El Pueblo de Puerto Rico v. Rosario Orangel, ante. Véase además El Pueblo de Puerto Rico v. Negrón Ayala, ante. (Énfasis nuestro.)

Como es de notar, tanto la deliberación como la malicia son elementos subjetivos cuya existencia, en la mayoría de los casos, sólo podrá ser determinada mediante

una inferencia razonable de los hechos. A esos efectos, este Tribunal ha reconocido varias instancias de las que fácilmente puede inferirse la existencia de malicia premeditada y/o deliberación. Entre éstas: 1. el atacar a una persona con un arma mortífera; 2. atacar con un arma a una persona desarmada; 3. dispararle a la víctima en más de una ocasión a corta distancia y alcanzándola en la cara; y 4. dispararle a la víctima dos tiros con un arma de fuego y luego acercársele para dispararle tres veces más mientras le dice "para acabar contigo". El Pueblo de Puerto Rico v. Rosario Orangel, ante. Véase además El Pueblo de Puerto Rico v. Negrón Ayala, ante.

V

Tomando en consideración el trasfondo fáctico y doctrinal antes expuesto, procedemos a resolver si procedía impartirle al jurado una instrucción sobre el delito de homicidio voluntario. Respondemos en la negativa. Luego de un análisis objetivo y sereno de la evidencia que desfiló ante el jurado, entendemos que el expediente se encuentra huérfano de evidencia que justifique una instrucción sobre el delito de homicidio voluntario.

Los hechos ocurridos en el presente caso descartan por completo la posibilidad de que el jurado hubiera podido razonablemente inferir que el acusado actuó movido por una provocación adecuada o lo suficientemente grave como para catalogar el acto de dar muerte como homicidio. Según se

desprende de los hechos previamente expuestos, el orden en que ocurrieron los eventos es razón suficiente para descartar la necesidad de que el juez impartiera instrucciones sobre el delito de homicidio. Como recordaremos, luego de darse la discusión entre la víctima y el acusado y de éstos haber intercambiado unos golpes, este último se dirigió a su automóvil y no fue hasta tres minutos después que regresó a la escena de los hechos con un bate en la mano y el revólver en su cintura. Una vez allí, volvió a increpar a la víctima y cuando ésta comenzó a alejarse tras ser amenazada con el arma, el acusado hirió de tres balazos a la víctima. <u>La víctima cayó al suelo, y ya en el suelo, el acusado se le acercó nuevamente y le disparó tres veces en la cabeza, ocasionándole la muerte</u>.

Ciertamente, de estos hechos se desprende claramente que el acusado dio muerte a la víctima con la malicia premeditada y deliberación que tipifican el delito de asesinato en primer grado. Entre el momento en que el acusado se marchó del lugar donde ocurrió la discusión y el momento en que éste atacó a la víctima con el arma de fuego, transcurrió suficiente tiempo para que el acusado se "enfriara" de lo ocurrido en la discusión y deliberara sobre el acto de dar muerte a la víctima.

Coincidimos con el Procurador General respecto a que:

> el hecho de que [el acusado] pudiera alejarse de la escena de la pelea por varios minutos, para luego regresar con un arma de fuego, derrota su contención de que cometió un homicidio. Independientemente de la súbita pendencia o arrebato de cólera que pudo haber sentido contra

[la víctima], no es menos cierto que tuvo la claridad de mente de (1) retirarse del lugar, (2) buscar un arma,(3) retornar al lugar de la reyerta, (4) disparar en contra de [la víctima], [y] (5) rematarl[a] mientras estaba en el suelo…. Más aún, [el acusado] no dio muerte a [la víctima] tan pronto obtuvo el arma, sino que se detuvo frente a él, le hizo una pregunta y luego de escuchar su contestación, le disparó. [Estos] eventos antes citados requieren un análisis inteligente y presencia mental, derrotando cualquier reclamo de que actuó reflexivamente, motivado por sus pasiones coléricas.

Dicho de otra manera, de los hechos del presente caso surgen varias instancias de las cuales --según hemos resuelto en el pasado-- puede inferirse la existencia de malicia premeditada y/o deliberación en la persona del acusado, lo cual fortalece nuestra conclusión de que no existe evidencia alguna de la cual el jurado haya podido razonablemente inferir que se cometió el delito de homicidio. El acusado atacó a la víctima con un arma mortífera, con conocimiento de que esta última se encontraba desarmada, y le disparó un total de seis veces, los últimos tres a corta distancia, en el área de la cabeza y luego de la víctima haber caído al suelo. No se necesita más evidencia que ésta para concluir que el acusado cometió el delito de asesinato en primer grado, como, en efecto, concluyó unánimemente el jurado en este caso.

En fin, somos del criterio que los hechos hoy ante nuestra consideración no son indicativos de una persona que actuó bajo los efectos de una súbita pendencia o arrebato de cólera. En consecuencia, actuó correctamente el juez de instancia al negarse a impartirle al jurado una instrucción

sobre el delito de homicidio. Resolver lo contrario "equivaldría a autorizar que el jurado imponga un castigo diferente al prescrito para el delito que de hecho se cometió". El Pueblo de Puerto Rico v. Moreno Morales, ante, p. 283. Véase además El Pueblo de Puerto Rico v. Serbia Bonilla, ante.

## VI

En mérito de lo antes expuesto, procede la revocación de la sentencia emitida por el Tribunal de Apelaciones; reinstalándose la emitida por el Tribunal de Primera Instancia, mediante la cual se le impuso al acusado pena de reclusión por la comisión del delito de Asesinato en Primer Grado y violación a la Ley de Armas.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        vs.                      CC-2006-864      *CERTIORARI*

Luis R. Rodríguez Vicente

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 10 de marzo de 2008

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y se ordena la reinstalación de la emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, mediante la cual se le impuso al acusado pena de reclusión por la comisión del delito de Asesinato en Primer Grado y violación a la Ley de Armas.

Así lo pronunció, manda el Tribunal y certifica al Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton "disiente por entender que la sentencia del Tribunal de Apelaciones es esencialmente correcta. A la luz de la prueba presentada el Tribunal de Primera Instancia debió impartir la instrucción al jurado sobre los elementos del delito de homicidio voluntario." La Juez Asociada señora Fiol Matta concurre en el resultado sin opinión escrita.

                            Aida Ileana Oquendo Graulau
                           Secretaria del Tribunal Supremo