Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>Vs.<br><br>JESÚS M. TORRECH RODRÍGUEZ<br><br>Apelante | KLAN202300429 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Crim. Núm.: CBD2019G0249-0250 CLA2019G0173-0176<br><br>SOBRE: ART- 190-C Y 190-D C. P., ART. 5.04 Y 5.15 (3) L.A. |

Panel integrado por su presidente, el Juez Pagán Ocasio, la Jueza Mateu Meléndez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de enero de 2025.

Comparece el señor Jesús M. Torrech Rodríguez (el apelante), solicita la modificación una sentencia emitida en su contra por el Tribunal de Primera Instancia, Sala de Arecibo.

Mediante estas, a tenor con el veredicto de culpabilidad rendido por un Jurado, el foro primario impuso al apelante, una pena de cárcel de 10 años por una infracción al Art. 5.04 de la derogada Ley de Armas de Puerto Rico, Ley Núm. 404-2000 (portación de arma sin licencia), duplicada a 20 años por el Art. 7.03 de la Ley Núm. 404-2000. Estas a cumplirse de modo consecutivo con tres infracciones al Art. 5.15 (apuntar con un arma) y duplicadas estas últimas por el Art. 7.03 de la Ley Núm. 404-2000, para un total de 35 años.

También, dos cargos por el delito de robo agravado del Código Penal de los cuales resultó con dos sentencias de 10 años concurrentes entre sí, pero consecutivas a las sentencias referidas arriba para un total de 45 años de reclusión.

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez Fernando J. Bonilla Ortiz.

Por los fundamentos expuestos en este dictamen, *confirmamos* las sentencias apeladas.

## -I-

Los hechos básicos del caso no están en controversia. La prueba de cargo fue a los efectos de que, el 14 de julio de 2019 en horas de la tarde un vehículo pequeño color blanco, marca Nissan de cuatro puertas con cristales oscuros pasó varias veces frente a la casa de la señora Katie Devlin, y de su esposo, el señor Benjamín Devlin en la carretera número 681, barrio Islote en el Municipio de Arecibo.

En una de las pasadas, el vehículo entró al patio del hogar, y quedó estacionado frente a la marquesina. La señora Devlin observó todo este movimiento desde la cocina del hogar, pudo ver a un sujeto apearse del vehículo con un "arma" blanca y roja en la mano, en dirección a la puerta de la sala. La señora Devlin trató de alertar a su esposo, pero el sujeto entró rápidamente a la sala antes de alguno poder reaccionar, apuntó con el arma de fuego a la señora Devlin, y seguido al señor Devlin. De este requirió dinero, el señor Devlin respondió no poseer efectivo en ese momento. Mientras la señora Devlin se agachó detrás de los gabinetes de la cocina e intentó marcar al 911.

Sin embargo, antes de lograr la llamada, el intruso golpeó la cabeza de la señora Devlin con la culata del arma de fuego, y arrebató el dispositivo móvil de las manos de esta. La señora Devlin gritó al recibir el golpe y sintió un goteo por su ojo izquierdo, utilizó una toalla para cubrir su cabeza. Al mismo tiempo, el señor Devlin escuchó la voz de un segundo intruso que provenía de las afueras del hogar. La voz instruía a un tercero a agacharse y entrar a la vivienda. El sobrino del señor, y la señora Devlin, Kaleb Gross Smith entró agachado por la puerta principal, el primer asaltante se apropió del celular de este último. El

segundo asaltante permaneció en el balcón del hogar, vigilaba el interior del hogar, miraba por una de las ventanas.

El primer asaltante apuntó nuevamente con el arma de fuego hacia el señor Devlin, solicitó dinero, este respondió no contar con dinero, pero ofreció sus tarjetas de créditos. Mientras ocurría el intercambio, llegó un amigo del matrimonio Devlin, el señor Ángel Suarez Vélez, en una camioneta para recoger una lavadora obsequiada por estos a aquel. El señor Devlin aprovechó la llegada del señor Suarez para gritar por socorro, su esposa se unió al grito de auxilio. Ambos asaltantes corrieron hacia el automóvil. El matrimonio Devlin corrió tras los delincuentes con su grito de ayuda, al cual respondieron varios vecinos al comenzar a dirigirse al hogar de los Devlin.

El señor Suarez al llegar al hogar de los Devlin ocupaba el área de carga de una camioneta mientras un amigo servía de chofer. Al llegar al lugar, escuchó los gritos de los Devlin, observó a los asaltantes correr tras el vehículo en pleno retroceso hacia el rodaje donde estaba estacionada la camioneta. El señor Suarez, además, observó a los Devlin salir de su hogar en pleno grito, la señora Devlin cubría parte de su cabeza con un paño ensangrentado. El primer asaltante apuntó el revolver al señor Suarez y ordenó a este a permanecer en el vehículo de carga. El señor Suarez rápidamente se posicionó boca abajo, acostado en el área de carga de la camioneta.

El automóvil de los asaltantes, todavía en retroceso, logró ubicarse en la carretera frente al hogar, el primer asaltante, apuntada su arma de fuego a los vecinos próximos, entró al vehículo como pasajero en el asiento delantero, y el segundo intruso como pasajero en el asiento posterior del vehículo. Entonces, el conductor del vehículo viró hacia la salida de la calle y procedió la marcha del automóvil en dirección al Municipio de

Barceloneta. El señor Suarez pudo observar la huida del vehículo e identificó el automóvil como un Nissan blanco cuya tablilla contenía los números "009". En ese momento comenzaron a llegar los vecinos al hogar del matrimonio Devlin.

La señora Mayra Álvarez Betancourt vivía en la misma calle y acudió al hogar del matrimonio Devlin al percatarse del algarabío. Al llegar, llamó al 911, mientras el señor Suarez relataba a la señora Álvarez los detalles del incidente, esta los comunicaba al operador del 911. La agente Sylvia López Fuentes, en aquel momento radio operadora de la Policía de Puerto Rico, recibió la alerta de asalto del sistema de emergencias 911. Reportó el incidente vía el sistema de radiocomunicaciones de la Policía de Puerto Rico.

El agente Frederick Sebastián Muñiz, junto a su compañero, el agente Josué Cameron Ruiz, patrullaban el área y respondieron a la alerta. Procedieron en patrulla hacia el área de Barceloneta, hasta que, el agente Sebastián, pasajero en la patrulla, identificó un vehículo con las señas indicadas por la agente López, un Nissan blanco cuya tablilla terminaba con los números "009". En vista de la congestión de tráfico vehicular en el lugar, el agente Sebastián solicitó asistencia. Los guardias municipales del Municipio de Barceloneta, el agente Luis Rodríguez Ríos, y el agente Gustavo Rosa González, respondieron, y asistieron a los policías estatales en la persecución del automóvil descrito.

Finalmente, los guardias municipales, junto a los policías estatales, lograron detener la marcha del vehículo, y arrestar a los tres ocupantes. Tanto el agente Sebastián, como el agente Rodríguez, identificaron al apelante como el conductor del automóvil detenido. Registraron el vehículo, pero no encontraron el arma de fuego. También pudieron corroborar que ninguno de los ocupantes del vehículo poseía licencia para portar armas.

El apelante, mediante juicio por jurado, resultó convicto por los cargos presentados por el ministerio público, como cooperador en los cargos por robo agravado, y como coautor en los cargos sobre posesión ilegal de un arma de fuego. Al aplicar los agravantes y duplicar las penas de posesión ilegal de arma de fuego, la suma de las sentencias totalizó 35 años de reclusión.

Inconforme, el apelante comparece ante este tribunal y señala los siguientes errores:

> Cometió error el juzgador de hechos al declarar culpable al apelante por infracción al Art. 5.04 de la Ley de Armas de 2000 como coautor del delito, aun cuando la prueba no estableció más allá de duda razonable que actuara en concierto y común acuerdo con el autor directo de delito, ni los requisitos para imponer responsabilidad como coautor, en violación a su derecho a la presunción de inocencia y al debido proceso de ley.

> Erró el Tribunal de Primera Instancia al duplicar las penas correspondientes a todos los delitos por infracción a la Ley de Armas de 2000 al amparo del Art. 7.03 de la misma Ley, aun cuando en las acusaciones correspondientes no se incluyeron los elementos necesarios para notificar dicho agravante, en violación al derecho del apelante a la adecuada notificación de los cargos en su contra y al debido proceso de ley, garantizados por el Art. II secciones 7 y 11 de la constitución de Puerto Rico y las enmiendas quinta y decimocuarta de la Constitución de los Estados Unidos.

Contamos con la postura de las partes, además de la transcripción del juicio en su fondo, de cuyos testimonios hicimos alusión previamente. Por lo que estamos en posición para resolver el presente recurso.

*-II-*

**-A-**

La presunción de inocencia es uno de los derechos fundamentales que asiste a todo acusado de delito. Este derecho está consagrado en el Artículo II, Sección 11, de nuestra Constitución, 1 LPRA Art. II, Sec. 11, y establece que toda persona es

inocente hasta que se pruebe lo contrario más allá de duda razonable.

El aludido imperativo constitucional se incorporó estatutariamente en la Regla 304 de Evidencia donde establece que se presume que toda persona es inocente de delito o falta hasta que se demuestre lo contrario. 32 LPRA Ap. VI R. 304. De igual modo, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, en lo pertinente, dispone que:

> En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá.

Conforme con el principio del debido proceso de ley, una persona acusada de delito se presume inocente hasta que, en juicio público, justo e imparcial, el Ministerio Fiscal pruebe más allá de duda razonable cada elemento constitutivo del delito y la conexión de estos con el acusado. *Pueblo v. Rosaly Soto* 128 DPR 729, 739 (1991). La prueba del Ministerio Público tiene que ser satisfactoria, de manera que produzca la certeza o la convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 100 (2000). Si la prueba desfilada por el Estado produce insatisfacción en el ánimo del juzgador, estamos ante duda razonable y fundada. *Pueblo v. Cabán Torres*, 117 DPR 645, 652 (1986).

La duda razonable es aquella insatisfacción o intranquilidad en la conciencia del juzgador sobre la culpabilidad del acusado una vez desfilada la prueba. *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002). Ello no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Solo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón. *Pueblo v. Pagán Santiago*, 130 DPR

470, 480 (1992); *Pueblo v. Bigio Pastrana,* 116 DPR 748, 760-761 (1985).

Nuestro Máximo Foro expresó lo siguiente en *Pueblo v. Cruz Granados,* 116 DPR 3, 22 (1984):

> Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser pues, una duda especulativa o imaginaria. **La duda que justifica la absolución no solo debe ser razonable, sino que debe surgir de una serena, justa e imparcial consideración de toda la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación.** (Énfasis nuestro).

Ahora bien, en los casos donde la prueba no establezca la culpabilidad más allá de duda razonable, no puede prevalecer una sentencia condenatoria. *Pueblo v. Acevedo Estrada, supra,* págs. 100-101; *Pueblo v. González Román,* 138 DPR 691, 707-708 (1995). De este modo, la apreciación de la prueba y el análisis racional de la misma constituye una cuestión mixta de hecho y de derecho. Por tal motivo, la determinación de culpabilidad de un acusado más allá de duda razonable puede ser revisable en apelación como cuestión de derecho. *Pueblo v. González Román, supra,* págs. 100-101; *Pueblo en interés del menor F.S.C.,* 128 DPR 931, 942 (1991); *Pueblo v. Serrano Nieves,* 93 DPR 56, 60 (1966).

**-B-**

En casos de naturaleza criminal, la función revisora del Tribunal de Apelaciones consiste en evaluar si la culpabilidad del acusado fue evidenciada por el Estado, más allá de duda razonable, habiéndose presentado prueba sobre cada uno de los elementos del delito imputado, la conexión del acusado con la comisión del delito y la intención o negligencia criminal desplegada por dicho acusado. Lo anterior es requisito *sine qua non,* para lograr una convicción válida en derecho que derrote la presunción de inocencia, más allá de duda razonable. *Pueblo v. Acevedo Estrada, supra,* pág. 98. El foro apelativo debe analizar la prueba

presentada a fin de determinar si la misma es suficiente y satisfactoria bajo la norma establecida por el Tribunal Supremo de Puerto Rico.

En *Pueblo v. Irizarry, supra,* págs. 788-790, el Tribunal claramente describió el marco de operación de nuestra función revisora como foro apelativo:

> No cabe duda que, en el ejercicio de tan delicada función revisora, no podemos abstraernos de las limitaciones que rigen el proceso de evaluación de la prueba por parte de un tribunal apelativo. Al enfrentarnos a la tarea de revisar cuestiones relativas a convicciones criminales, siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador por lo cual los tribunales apelativos solo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Solo ante la presencia de estos elementos y/o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble, habremos de intervenir con la apreciación efectuada.
>
> Ello no obstante, en casos penales debemos siempre recordar que el referido proceso analítico tiene que estar enmarcado, por imperativo constitucional, en el principio fundamental de que la culpabilidad del acusado debe ser probada más allá de toda duda razonable. En consecuencia, "y aun cuando ello no ocurre frecuentemente, hemos revocado sentencias en las cuales las determinaciones de hecho, aunque sostenidas por la prueba desfilada, no establecen la culpabilidad del acusado más allá de duda razonable." No hemos vacilado en dejar sin efecto un fallo inculpatorio cuando el resultado de ese análisis "nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del acusado." (Citas omitidas).

Ante la ausencia de un mecanismo infalible para encontrar la verdad, la determinación de lo que es o no cierto es un deber de conciencia, reservado no sólo al juzgador de los hechos, sino que compete asimismo a los tribunales apelativos. *Pueblo v. Carrasquillo,* 102 DPR 545, 551-552 (1974). aun cuando nuestra función revisora tiene ciertas limitaciones, ello no implica que el foro contra cuyo dictamen se recurre está exento de errar.

Es decir, en nuestro ordenamiento judicial confiere deferencia al juzgador de hechos en cuanto a su apreciación de la

prueba testifical porque, al ser una tarea llena de elementos subjetivos, es quien está en mejor posición para aquilatarla. *Rosado Muñoz v. Acevedo Marrero*, 196 DPR 884, 917 (2016). Es el Tribunal de Primera Instancia el que tuvo la oportunidad de oír y ver el comportamiento de la testigo. *Íd.* Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente de cualquier hecho. *Íd.*; *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015). No obstante, "[...] cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido". *Rosado Muñoz v. Acevedo Marrero, supra*, pág.918.

Nuestra función revisora limitada no implica, sin embargo, "que el foro recurrido sea inmune al error", ni que la determinación de culpabilidad de dicho foro constituya una "barrera insalvable". *Pueblo v. Acevedo Estrada, supra*, pág. 100; *Pueblo v. Cabán Torres, supra*, pág. 655 (1986). Por ello, cuando un análisis ponderado de la prueba que tuvo ante sí el tribunal sentenciador produzca en el foro apelativo dudas, razonables y fundadas sobre la culpabilidad del acusado, el tribunal no "vacilará" en dejar sin efecto un fallo condenatorio. "Nosotros, al igual que el foro recurrido, tenemos no sólo el derecho sino el deber de tener la conciencia tranquila y libre de preocupación". *Pueblo v. Irizarry, supra*, pág. 790.

**-C-**

La anterior Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA sec. 455 *et seq.,* era una legislación especial que regulaba todo lo relativo a la concesión de licencias para poseer y portar armas en Puerto Rico al momento de ocurrir los hechos que resultaron en la sentencia apelada. En lo pertinente, el Art. 5.04 de la Ley de Armas de Puerto Rico, *supra,* disponía:

Toda persona que transporte cualquier arma de fuego o parte de ésta, **sin tener una licencia de armas**, o porte cualquier arma de fuego **sin tener su correspondiente permiso para portar armas**, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión **por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta**. [...] (Énfasis nuestro).

Sobre el delito reseñado, el Tribunal Supremo de Puerto Rico expresó en *Pueblo v. Negrón Nazario*, 191 DPR 720, 757-758 (2014), lo siguiente:

[E]l delito de portación ilegal tipificado en el Art. 5.04 de la Ley de Armas, *supra,* se produce en dos modalidades: (1) cuando una persona porta un arma de fuego **sin un permiso de portación** o (2) cuando transporta un arma o parte de esta **sin licencia**.

En el caso que se impute el delito de portación ilegal bajo la primera modalidad, el Ministerio Público tiene dos vías para demostrarlo. Primero, podría presentar evidencia de que, en efecto, la persona estaba portando un arma de fuego sin un permiso a tales efectos. En ese caso, la evidencia debe estar dirigida a demostrar la portación del arma y la ausencia de permiso. Segundo, podría presentar evidencia de que aun cuando la persona contaba con un permiso de portación, esta no la *portó* según los términos autorizados. Por ejemplo, no la portó en el lugar en el que se le autorizó. En tal caso, correspondería presentar evidencia que demuestre la portación del arma y la violación a tal condición. En ese análisis, enfatizamos que el *uso* que se le brinde al arma ilegalmente portada es impertinente para efectos de la consumación del delito de portación ilegal.

**-D-**

La mera presencia de "una persona durante la comisión de un delito no es suficiente, por sí sola, para sostener una convicción por tal delito". *Pueblo v. Meléndez Rodríguez,* 136 DPR 587, 621 (1994). Sin embargo, tampoco es necesario que el acusado ejecute personalmente el acto delictivo para imponer responsabilidad penal. Su mera presencia pudiera bastar "siempre que su responsabilidad como coautor pueda establecerse por actos anteriores, o como el resultado de una conspiración en que

participó, o de un designio común". *Pueblo v. Ortiz Martínez,* 116 DPR 139, 145 (1985), citando a *Pueblo v. Aponte González,* 83 DPR 511, 519-520 (1961).

Surge de lo anterior que, si bien la presencia de alguien en el lugar de los hechos **pudiera ser indicio de su responsabilidad como coautor**, pero solo podrá establecerse de quedar demostrados actos anteriores y posteriores que, considerados en conjunto, revelen la existencia de una conspiración o de un designio común. *Pueblo en interés menor F.S.C., supra,* págs. 940-941 (1991). Esto último podrá ser establecido mediante prueba directa o circunstancial. *Pueblo v. Ortiz Martínez, supra,* pág. 145.

En el caso particular de los delitos cuyo elemento esencial es la posesión ilegal de armas, "se puede imponer responsabilidad criminal, no sólo cuando el acusado tiene la posesión inmediata del objeto, sino también cuando el imputado ejerce una posesión constructiva sobre el mismo". *Pueblo v. Meléndez Rodríguez, supra,* pág. 621. A tal efecto, se ha aclarado que la posesión constructiva es aquella en la que, a pesar de no tener la posesión inmediata o física del objeto, la persona "tiene el poder e intención de ejercer control o dominio sobre el mismo". *Íd. Véase,* también *Pueblo en interés menor F.S.C., supra,* pág. 940.

Tanto la posesión directa como la constructiva se pueden probar con evidencia directa o circunstancial. *Pueblo v. Meléndez Rodríguez, supra,* pág. 622. Sin embargo, "[a]l evaluar si existe posesión constructiva deben tomarse en consideración los eventos anteriores, coetáneos y posteriores a la alegada posesión ilegal". *Pueblo en interés menor F.S.C., supra,* pág. 941. A manera de ejemplo, deberá considerarse, entre otras cosas, si el acusado alegó ser dueño del objeto ilegal o si participó en su robo, si intentó disponer del objeto en cuestión, y el tiempo transcurrido entre el robo y la alegada posesión. *Íd.*

**-E-**

El Código Penal de Puerto Rico de 2012, Ley Núm. 146-2012, según enmendado, 33 LPRA secs. 5001 *et. seq.*, imputa diferentes tipos de responsabilidad según el nivel de participación de la persona en el acto delictivo. Para ello, es necesario demostrar que la persona "actuó a propósito, con conocimiento, temerariamente o negligentemente con relación a un resultado o circunstancia prohibida por ley". Art. 21 del Código Penal, 33 LPRA sec. 5034.

El mismo artículo aclara que "[e]l elemento subjetivo del delito se manifiesta por las circunstancias relacionadas con el hecho, la capacidad mental, las manifestaciones y conducta de la persona". *Íd.* Así, compete demostrar que la persona imputada de delito incurrió en acciones producto de su voluntad, o que pudo prever. *Pueblo v. Sustache*, 176 DPR 250, 311 (2009).

El Art. 45 del Código Penal, 33 LPRA sec. 5068, define la figura del cooperador: "[s]on cooperadores los que, con conocimiento, cooperan mediante actos u omisiones que no contribuyen significativamente a la consumación del delito". El Código Penal establece, además, que "[a]l cooperador se le impondrá una pena equivalente a la mitad de la pena del autor, hasta un máximo de diez (10) años". *Íd.*

En *Pueblo v. Sustache*, 176 DPR 250 (2009), nuestro Tribunal Supremo se expresó en detalle en torno a las figuras de autor/coautor y cooperador, y los niveles de responsabilidad de éstos respecto a un hecho punible, aclarando que "ambas figuras son formas de intervención en un delito. No obstante, la primera es una forma de autoría, mientras la segunda es un tipo de participación". *Íd.*, pág. 300.

El concepto de coautor aplica a "aquellas personas que participan consciente e intencionalmente en la comisión de un delito"; esto es, quienes actúan "en concierto y común acuerdo,

como parte de una conspiración o designio común". *Íd.*, pág. 301.

Sobre el particular, nuestro Máximo Foro enfatizó lo siguiente:

> Se necesita establecer algún grado de consejo, incitación o participación directa o indirecta en el hecho punible. La mera presencia de una persona, durante la comisión de un delito, no lo convierte en coautor. Tampoco se considera coautor a aquella persona quien, sin saberlo, participa o coopera en la comisión de un delito. *Íd.*

Los cooperadores son "las personas que ayudan, pero no participan directamente en la planificación o ejecución del delito, ni tienen conocimiento pleno del mismo". *Íd.,* págs. 304–305.

Bajo Código Penal de Puerto Rico son principales o autores los que toman parte directa en la comisión del delito. Art. 44 del Código Penal, 33 LPRA sec. 5067. En cambio, son cómplices o coautores los que, a propósito o con conocimiento cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, que contribuyen significativamente a la consumación del hecho delictivo. *Íd.* La complicidad o coautoría requiere algún grado de consejo, incitación o participación, directas o indirectas en la comisión del acto punible criminalmente. *Pueblo v. Santos Ortiz*, 104 DPR 115, 119 (1975)

Según nuestra casuística no es indispensable, que el acusado ejecute personalmente el acto delictivo y basta con su presencia pasiva[2], siempre que su responsabilidad como coautor pueda establecerse por actos anteriores, o como el resultado de una conspiración en que participó, o de un designio común. *Pueblo v. Aponte González,* 83 DPR 511, 519-520 (1961). El elemento de "concierto y común acuerdo o designio común", como cualquier otro hecho en controversia, puede ser establecido mediante prueba indirecta o circunstancial. *Pueblo v. Cancel Peraza*, 106 DPR 28, 33

---

[2] La mera presencia durante la comisión de un delito no es suficiente por sí sola para sostener una convicción, pero este hecho puede considerarse juntamente con las otras circunstancias que rodean el hecho delictivo a los fines de la determinación de responsabilidad. *El Pueblo de Puerto Rico en el interés del menor F.S.C.,* 128 DPR 931, 939 (1991).

(1977); *Pueblo v. Salgado Velázquez*, 93 DPR 380, 383 (1966).

Normalmente el común concierto y acuerdo se refiere a aquellos delitos que requieren la intención general como forma de culpabilidad o aquella intención específica que contienen algunos delitos en nuestro Código Penal. La alegación de común concierto y acuerdo es necesaria para implicar a coautores del delito que no han participado activamente en la comisión de este. *Pueblo v. Ruiz Ramos*, 125 DPR 365, 389-390 (1990).

En cuanto al elemento subjetivo de la intención general contenido en el Art. 5.04 de Ley de Armas del 2000, el Art. 21, Código Penal, 33 LPRA sec. 5034 establece:

> (a) Una persona solamente puede ser sancionada penalmente **si actuó a propósito, con conocimiento**, temerariamente o negligentemente con relación a un resultado o circunstancia prohibida por ley.
>
> (b) El elemento subjetivo del delito se manifiesta por las circunstancias relacionadas con el hecho, la capacidad mental, las manifestaciones y conducta de la persona.[3]

En su parte pertinente el Art. 22 del Código penal 33 LPRA sec. 5035, define las frases "a propósito" y "con conocimiento":

> (1) A propósito. –
>
>> (a) Con relación a un resultado, una persona actúa "a propósito" cuando su objetivo consciente es la producción de dicho resultado.
>>
>> (b) Con relación a una circunstancia, una persona actúa "a propósito" cuando la persona cree que la circunstancia existe.
>
> (2) Con conocimiento. –
>
>> (a) Con relación a un resultado, una persona actúa "con conocimiento" cuando está consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta. (b) Con relación a un

---

[3] El Art. 1 del Código Penal, 33 LPRA sec. 5001, establece: "Los principios contenidos en el Libro Primero de la Parte General de este Código aplican a la conducta regulada por otras leyes penales, salvo que éstas dispongan lo contrario".

elemento de circunstancia, una persona actúa "con conocimiento" cuando está consciente de que la existencia de la circunstancia es prácticamente segura.

(3) ...

**-F-**

El Art. 7.03 de la Ley de Armas de 2000, 25 LPRA sec. 460b, sobre el agravamiento de las penas, fue enmendado por la Ley Núm. 137-2004 a los fines de añadir el siguiente párrafo:

Todas las penas de reclusión que se impongan bajo este capítulo serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, si la persona hubiere sido convicta anteriormente por cualquier violación a este capítulo o por cualquiera de los delitos especificados en al sec. 456j de este título o usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará.

Surge de la exposición de motivos de la Ley Núm. 137-2004, que la Asamblea Legislativa aprobó la misma para "fortalecer las herramientas al alcance del sistema judicial y corregir lagunas existentes para penalizar severamente al delincuente que hace mal uso de la licencia de armas y sus permisos, así como el uso de armas y municiones ilegales". Asimismo, consta del historial legislativo de la Ley que el Art. 7.03, *supra*, fue enmendado para "añadir un nuevo párrafo que dispone que las penas serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, en el caso de reincidentes y **cuando existan daños a terceros por el uso ilegal del arma, la pena se duplicará**".[4]

El Tribunal Supremo de Puerto Rico en el caso de *Pueblo v. Concepción Guerra*, 194 DPR 291 (2015), tuvo la oportunidad de dilucidar el alcance del Art. 7.03 de la Ley de Armas, *supra*, en lo que atañe a la autoridad para duplicar la pena impuesta a un

---

[4] Véase Informe sobre el P. de la C. 4641 rendido por la Comisión de lo Jurídico de la Cámara de Representantes de 24 de mayo de 2004, 7ma Sesión Ordinaria, 14ta Asamblea Legislativa.

acusado cuando medien agravantes y atenuantes. En cuanto ese aspecto, el más alto Foro judicial resolvió que la pena que dicho Artículo autoriza duplicar es la dispuesta para el delito imputado una vez contemplados los posibles agravantes y atenuantes. *Íd.*, pág. 313. Aclaró que en ausencia de agravantes y atenuantes la duplicación se regirá por la pena fija establecida en el delito. *Íd.*, pág. 314. Asimismo, reiteró que, en conformidad con las observaciones de la Comisión de lo Jurídico de la Cámara de Representantes, el Art. 7.03 de la Ley de Armas, *supra,* se enmendó a los fines de disponer que la pena se duplicará en los casos de reincidentes y cuando existan daños a terceros por el uso de un arma ilegal. *Íd.,* pág. 311.

### *-III-*

Por hechos acaecidos el 14 de julio de 2019 en el municipio de Arecibo, la parte apelante resultó sentenciada a pena de reclusión de 10 años por una infracción en calidad de coautor al Art. 5.04 de la anterior Ley de Armas de Puerto Rico.

La acusación lee del siguiente modo:

El referido acusado, Jesús M. Torrech Rodríguez, actuando en común y mutuo acuerdo con Alejandro Modesto Castro Meléndez, y Juan Eugenio Lebrón González, allá para el día 14 de julio de 2019, y en Arecibo, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Arecibo, ilegal, voluntaria y criminalmente, transportó y/o portó un arma de fuego, un arma color negro y rojo, sin tener licencia de armas para portar armas bajo la Ley. El arma fue utilizada en la comisión del delito de Robo Agravado.

El foro primario aplicó el Art. 7.03 de la Ley de Armas de Puerto Rico al Art. 5.04 debido a que, el arma de fuego fue utilizada en la comisión de un robo agravado, y ocasionó daño físico a una persona. El postulado en contra de la sentencia apelada queda resumido en las siguientes oraciones en el alegato de la parte apelante:

En este caso la prueba no estableció que el apelante hubiese prestado o facilitado la supuesta arma de fuego que portaba Lebrón González, o que hubiese llevado a cabo algún tipo de gestión dirigida a facilitar que este la consiguiera ilegalmente. Por tanto, era improcedente en derecho que se le aplicara la misma responsabilidad como coautor de la portación ilegal de la supuesta arma de fuego. Nótese, además, que el coacusado Alejandro Castro Meléndez fue declarado culpable por el mismo cargo, a pesar de que su participación fue más significativa, al bajarse del auto, ordenar a una de las victimas entrar en la residencia y quedarse en el balcón observando por una ventana lo que ocurría en el interior de la vivienda.

Sobre la base de estas premisas, la parte apelante concluye insuficiencia en la prueba presentada por el Ministerio Público como para establecer su culpabilidad más allá de toda duda razonable como coautor por el delito de portación y uso ilegal de un arma de fuego. Por ello, solicita la modificación de la culpabilidad del apelante a cooperador y la consecuente modificación en la pena impuesta.

En cuanto al delito de portación y uso de arma sin licencia, el Ministerio Público demostró indubitadamente la intención criminal del acusado principal. En este caso, no existe controversia sobre que el asaltante principal, el señor Lebrón portó ilegalmente un arma de fuego al cometer el delito de robo agravado el 14 de julio de 2019 en la residencia del matrimonio. El apelante solo cuestiona el grado de complicidad atribuido por el foro primario pues asegura que, como cuestión de hechos, solo debió catalogársele como cooperador, y no coautor del delito de portación y uso ilegal de un arma de fuego.

Como sabemos la mera presencia del apelante en el lugar de hechos pudiera bastar "siempre que su responsabilidad como coautor pueda establecerse por actos anteriores, o como el resultado de una conspiración en que participó, o de un designio común". *Pueblo v. Ortiz Martínez*, 116 DPR 139, 145 (1985), citando a *Pueblo v. Aponte González*, 83 DPR 511, 519-520 (1961).

Específicamente, en estos casos de coautoría la responsabilidad criminal debe ser establecida por actos anteriores y posteriores que, considerados en conjunto, revelen la existencia de una conspiración o de un "designio común". *Pueblo v. Ortiz Martínez*, 116 DPR 139, 145-147 (1985); *Pueblo v. Prieto Vélez*, 93 DPR 102, 107 (1966); *Pueblo v. Aponte González*, 83 DPR 511, 519-520 (1961).

La primera oración del citado Art. 22 del Código Penal recoge la norma expuesta de que para imponer una responsabilidad penal es necesario que se configure el tipo subjetivo en este caso. Al analizar si se configuró el elemento subjetivo, es necesario considerar igualmente "las circunstancias retrospectivas, es decir, circunstancias anteriores a la acción u omisión tipificada como delito que sean indicativas de una negligencia o intención de realizar el acto o la omisión delictiva". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 5.6.3, pág. 193. Igualmente, es menester analizar las circunstancias concomitantes que "ocurren simultáneamente con la acción u omisión delictiva". *Íd.* Por último, resulta ineludible auscultar "las circunstancias prospectivas, es decir, aquellas que ocurren posterior al acto u omisión sancionado pero que tienden a demostrar una determinada intención o negligencia". Pueblo v. Rivera Cuevas, 181 D.P.R. 699, 710 (2011).

Añada que, en el caso particular de los delitos cuyo elemento esencial es la posesión ilegal de armas, "se puede imponer responsabilidad criminal, no sólo cuando el acusado tiene la posesión inmediata del objeto, sino también cuando el imputado ejerce una posesión constructiva sobre el mismo". *Pueblo v. Meléndez Rodríguez, supra*, pág. 621. Tanto la posesión directa como la constructiva pueden quedar demostradas con evidencia directa o circunstancial. *Pueblo v. Meléndez Rodríguez, supra*, pág.

622. Al igual que, a un coautor de un delito "[a]l evaluar si existe posesión constructiva deben tomarse en consideración los eventos anteriores, coetáneos y posteriores a la alegada posesión ilegal". *Pueblo en interés menor F.S.C., supra*, pág. 941.

Consecuentemente, la **responsabilidad del apelante como poseedor ilegal indirecto** del arma de fuego, solo podía establecerse mediante actos anteriores, concomitantes, y posteriores que, considerados en conjunto, revelen la existencia de una conspiración o de un designio común entre los ocupantes del vehículo en relación con la posesión y portación ilegal del arma de fuego. *Pueblo en interés menor F.S.C., supra*, págs. 940-941 (1991). Así, el Ministerio Público sólo podía establecerla la responsabilidad criminal del apelante **como coautor del delito de poseer y portar un arma de fuego ilegalmente** con prueba de las circunstancias relacionadas con la conducta del imputado durante la comisión del delito.

A tenor con el requisito de intención criminal, el mero hecho de que, el apelante se encontrara en el vehículo donde se transporta el arma de fuego tampoco puede llevar a la conclusión de que el apelante actuaba en común acuerdo con autor director de delito. Pueblo v. Maysonet Laureano, 90 D.P.R. 497, 501 (1964). Mas bien, la presencia del apelante como ocupante y conductor del vehículo debe considerarse junto a las demás circunstancias que rodean los hechos delictivos para poder imponer responsabilidad criminal.

Los apuntamientos de la parte apelante van dirigidos a la aseveración de su propia inocencia sobre la carencia de prueba sobre la posesión directa del arma de fuego color negra y roja. Empero, como vimos, la norma reniega tal argumento.

Sabido es que en todo proceso criminal es indispensable para una condena que el Estado pruebe el *corpus delicti*, es decir, el hecho de que se produjo un daño por una mano criminal, en este caso la portación y uso ilegal de un arma de fuego de forma mediata. 1 Wharton, Criminal Evidence (1955, supl. 1972), sec. 17.

Para establecer tal hecho, seguimos el modelo establecido en *Pueblo v. Ortiz Rodríguez*, 100 DPR 972, 979 (1972), donde el Tribunal Supremo sintetizó una clasificación tripartita de circunstancias susceptibles de ser evaluadas y consideradas en la determinación de la culpabilidad de un acusado del siguiente modo: (a) circunstancias prospectivas: hechos anteriores al crimen y que apuntan hacia su futura comisión (motivo, plan, preparativos, etc.); (b) circunstancias concomitantes: hechos simultáneos al crimen que permiten que se lleve a cabo por el acusado (presencia en el lugar del crimen, acceso a la víctima, etc.); (c) circunstancias retrospectivas: hechos posteriores al crimen que sugieren que el acusado lo cometió (fuga, ocultación de evidencia, etc.). Evaluemos tales miramientos en el presente caso:

a. **Circunstancias prospectivas:**

1. Los tres acusados pasaron varias veces por el frente de la casa del matrimonio Devlin en el vehículo detenido por los policías estatales y los guardias municipales.

2. La parte apelante era el conductor del vehículo ocupado por los agentes del orden público.

3. El autor directo del delito de portación y uso ilegal de un arma de fuego ocupaba el asiento delantero del pasajero en el vehículo utilizado en la comisión del delito de uso y portación ilegal de un arma de fuego.

4. El apelante entró con el vehículo al terreno de los Devlin y estacionó el automóvil justo al frente del hogar de las víctimas.

5. El autor directo del delito se apeó del vehículo con un arma de fuego blanca y roja en la mano, y se

dirigió en dirección a la puerta de la sala del hogar del matrimonio Devlin.

**b. Circunstancias concomitantes:**

1. El apelante permaneció en el automóvil mientras el autor directo del delito incurrió en el delito de robo agravado

**c. Circunstancias retrospectivas:**

1. El apelante esperó a que el autor directo del delito ocupara el asiento de pasajero delantero del vehículo antes de partir en dirección al Municipio de Barceloneta.

2. El apelante condujo el vehículo al comienzo de la huida mientras el autor director del delito ocupaba la silla delantera del pasajero, y apuntaba con el arma de fuego a los vecinos de los Devlin.

3. El apelante condujo el automóvil utilizado en la comisión del delito mientras la policía estatal, y los guardias municipales, intentaban detener la huida del apelante del lugar de los hechos.

4. En algún momento durante el transcurso de la huida, o de la persecución, un tiempo aproximado de 14 minutos, los asaltantes dispusieron del arma de fuego.

5. El autor directo del delito ocupó la silla del pasajero en la parte delantera del automóvil al momento del arresto de los tres acusados.

6. El apelante fue identificado por los agentes del orden público como el conductor del vehículo detenido el cual transportaba al autor directo del delito de portación y uso ilegal de un arma de fuego.

7. El arma de fuego utilizada por el autor directo del delito para cometer robo agravado no fue ocupada tras un registro infructuoso del automóvil por los agentes del orden público.

De las actuaciones del apelante puede inferirse un motivo comprobado para el crimen: el lucro; y también un intento de evitar ser descubierto. El huir o tratar de ocultar la evidencia de un crimen es una circunstancia que puede tomarse en cuenta al determinar la culpabilidad de un acusado. *Pueblo v. Ortiz Rodríguez,* 100 DPR 972, 980 (1972). Tampoco podemos ignorar que, llegaron juntos al lugar de los hechos, que mientras el autor directo de delito cometió robo agravado, el apelante permaneció en

espera en el vehículo, y que, bastó la salida a toda prisa del autor directo de delito, y del segundo asaltante para proceder a la huida del lugar, no sin esperar por la entrada de los otros dos pasajeros al vehículo ocupado. El designio común no tiene que probarse con prueba directa. Las actuaciones de los tres confirman la existencia del plan de robar, como robaron, a sus víctimas.

Ahora bien, la posesión constructiva del arma de fuego por la parte apelante quedó demostrada en las siguientes circunstancias. La parte apelante conocía que, el autor directo del delito portaba un arma de fuego para apropiarse ilegalmente de las pertenencias de unos terceros, el motivo y designio común entre los acusados, y durante todo el intervalo del incidente, inclusive antes y después del mismo, el apelante mantuvo total control del vehículo que sirvió de transporte al arma de fuego, con el cual intentaron evadir a las autoridades oficiales y evitar así el procesamiento criminal sobrevenido. Inclusive, durante la fuga, y persecución, la parte apelante transportó el arma de fuego en el vehículo que conducía y oportunamente dispuso del arma de fuego.

La posesión constructiva, indirecta o mediante de un arma de fuego queda demostrada cuando el acusado tiene el dominio, control o posesión del vehículo que transportó el arma de fuego de forma ilegal. *United States v. Fernandez-Jorge*, 894 F.3d 36, 43-44 (1st Cir. 2018); *United States v. Ridolfi*, 768 F.3d 57, 62 (1st Cir. 2014); *United States v. McLean*, 409 F.3d 492, 504 (1st Cir.2005). Además, el apelante estuvo contiguo al arma de fuego en distintos intervalos de tiempo suficientes que permitirían a cualquier jurado inferir su control sobre el arma de fuego en sí, debido a que, su proximidad al arma de fuego permitía poseer y controlar el arma de fuego. *United States v. Davis*, 909 F.3d 9, 18–19 (1st Cir. 2018) ("Constructive possession of a firearm may be established by showing that the person knows (or has reason to know) that the

firearm is within easy reach, so that he can take actual possession of it virtually at will.") *United States v. Liranzo,* 385 F.3d 66, 69 (1st Cir.2004); *United States v. Wight,* 968 F.2d 1393, 1398 (1st Cir. 1992).

Indistinto esto a que, tal oportunidad brotara durante un mero instante. *United States v. Zavala Maldonado,* 23 F.3d 4, 8 (1st Cir.1994) ("Possession, whether actual or constructive, can be extremely brief: a minute of possession is as much an offense as a year of possession."); *United States v. Sylvestre,* 78 F.4th 28, 36 (1st Cir.), cert. denied, 144 S. Ct. 370, 217 L. Ed. 2d 198 (2023); *United States v. Fernandez-Jorge,* 894 F.3d 36, 43–44 (1st Cir. 2018); *United States v. Zavala Maldonado,* 23 F.3d 4, 7 (1st Cir. 1994).

La conclusión del Jurado está fundamentada en toda la evidencia circunstancial relatada en esta sentencia. Del conjunto de todas estas consideraciones jurídicas y premisas fácticas podemos deducir plenamente, no solo el conocimiento certero del apelante sobre la existencia del arma de fuego y su presencia en el vehículo bajo su control, sino que, igualmente, puede inferirse su proximidad, por tanto, oportunidad de control del apelante sobre el arma de fuego.

La actuación del apelante fue ejecutada con pleno conocimiento de su ilegalidad. No existe duda, su acción (el uso y portación ilegal de un arma de fuego) fue voluntaria y consciente. Véanse, *Pueblo v. Flores Betancourt,* 124 DPR 867 (1989); *Pueblo v. Ortiz Rodríguez,* 100 DPR 972, 979 (1972). El error señalado no fue cometido.

La parte apelante también expone que, en la acusación por el Art. 5.04 y Art. 5.15 de la Ley de Armas no fueron incluidos los elementos dispuestos bajo el Art. 7.03 de la Ley de Armas sobre el hecho de haber causado grave daño corporal. Así, razonó que, no procedía la aplicación de la duplicidad de la pena que dispone el

Art. 7.03 de la Ley de Armas por no habérsele notificado adecuadamente de los cargos en su contra en violación a su debido proceso de ley.

Pasamos ahora a considerar si al amparo del anterior Art. 7.03 de la Ley de Armas, supra, la pena que se puede duplicar, de encontrarse probada alguna circunstancia agravante.

La Ley Núm. 404-2000, anteriormente conocida como la Ley de Armas de Puerto Rico fue aprobada con el propósito principal de lograr una solución efectiva al problema del control de armas de fuego en manos de delincuentes en Puerto Rico, el cual constituye una "vertiente directa de la actividad criminal". Exposición de Motivos de la Ley Núm. 404-2000, 2000 (Parte 3) Leyes de Puerto Rico 2601. Según dispuso expresamente el legislador, "[e]stas armas son utilizadas durante la comisión de todo tipo de actos criminales, situación que hace necesario adoptar medidas legislativas cuya naturaleza sancionadora constituya un eficaz disuasivo al delincuente". *Id.*, págs. 2601–2602. A tales efectos, ese estatuto orienta a las personas autorizadas en Puerto Rico a manejar armas de fuego para que lo hagan responsablemente y, a su vez, apercibe al delincuente de las serias consecuencias de incurrir en actos criminales al utilizar armas de fuego. *Cancio, Ex parte*, 161 DPR 479, 484 (2004).

Enmarcado dentro del mencionado propósito legislativo, el Art. 5.04 de la Ley de Armas, disponía, en lo aquí pertinente, que toda persona que transporte o porte cualquier arma de fuego sin tener la correspondiente licencia o permiso de portación de armas incurrirá en un delito grave y de resultar convicta será sancionada con una pena de reclusión por un término fijo de diez años.

El Art. 5.15 del mismo estatuto, regulaba la conducta proscrita con relación a apuntar o disparar un arma. Este artículo establece que incurrirá en un delito grave, con pena de reclusión

de un término fijo de cinco años, toda persona que voluntariamente dispare cualquier arma en un lugar público, o en cualquier otro sitio donde haya alguna persona que pueda sufrir daño, o que intencionalmente, aunque sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a la persona. Igualmente, este artículo autoriza la posibilidad de aumentar hasta un máximo de diez años o reducir hasta un mínimo de un año la pena fija establecida de mediar circunstancias agravantes o atenuantes.

Posterior a la entrada en vigor de la Ley de Armas, surgió la necesidad de reevaluar su contenido para atemperarlo a las exigencias de nuestra sociedad. Exposición de Motivos de la Ley Núm. 137-2004, 2004 (Parte 1) Leyes de Puerto Rico 756. Con ese fin, la Asamblea Legislativa aprobó la Ley Núm. 137-2004 para "fortalecer las herramientas al alcance del sistema judicial y corregir lagunas existentes para penalizar severamente al delincuente que hace mal uso de la licencia de armas y sus permisos así como el uso de armas y municiones ilegales". *Id.*, pág. 757.

Fue al amparo de esta legislación que se enmendó el Art. 7.03 de la anterior Ley de Armas, para permitir, entre otras cosas, que la pena dispuesta para el delito imputado pueda ser duplicada si la persona acusada ha sido condenada anteriormente por cualquier violación a dicha ley. En conformidad con las observaciones de la Comisión de lo Jurídico de la Cámara de Representantes, el Art. 7.03, supra, se enmendó para disponer que la pena se duplicara en casos de reincidentes y cuando existan daños a terceros por el uso ilegal de un arma. Informe sobre el P. de la C. 4641 de la Comisión de lo Jurídico de la Cámara de Representantes de 24 de mayo de 2004, 7ma Sesión Ordinaria, 14ta Asamblea Legislativa, pág. 10.

En lo que respecta al asunto específico ante nuestra consideración, el apelante, fue acusado y sentenciado por violaciones de los Arts. 5.04 y 5.15, con sus correspondientes agravantes. El foro primario impuso sobre el apelante las penas fijas establecidas de cinco y diez años por infracciones de los Arts. 5.04 y 5.15 de la derogada Ley de Armas respectivamente. Además, al aplicó el agravante adicional del Art. 7.03 y duplicó las penas agravadas.

No encontramos apoyo legal alguno que sustente la interpretación de la parte apelante sobre este punto. Por el contrario, el trámite legislativo de la referida ley avala la aplicación dada por el Tribunal de Primera Instancia en el presente caso.

Una lectura del lenguaje incorporado en el Art. 7.03 de la anterior Ley de Armas de la exposición de motivos de la Ley Núm. 137-2004 y del Informe sobre el P. de la C. 4641 rendido por la Comisión de lo Jurídico de la Cámara de Representantes, revela que la intención del legislador de duplicar la pena procede en los casos de reincidentes **o** en los casos en que se utilice un arma en la comisión de un delito y como resultado de tal violación, alguna persona sufra daño físico o mental. Esta imposición estatutaria es obligatoria y no da margen a la discreción.

El anterior Art. 7.03 de la Ley de Armas establece circunstancias específicas en las que el juzgador es obligado a duplicar la pena.

En conclusión, el Ministerio Público no tenía el deber de incluir en la acusación por el Art. 5.04 o el Art. 5.15 de la derogada Ley de Armas, el hecho de que alguna persona sufriera un daño físico. Lo anterior, ya que, como indicamos, ese aspecto no consiste en un elemento del delito, sino en una directriz estatutaria dirigida al juzgador al momento de imponer la sentencia.

En consecuencia, confirmamos la aplicación dada por el Tribunal de Primera Instancia en el presente caso.

**-IV-**

Por los fundamentos antes expuestos, que hacemos formar parte de este dictamen, *confirmamos* las sentencias apeladas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones